Argued and submitted September 18, reversed and remanded December 20, 2006, petition for review allowed April 10, 2007 (342 Or 633)

Jose GONZALES,
*Appellant,*

*and*

Al BATHKE,
*Plaintiff,*

*v.*

FARMERS INSURANCE COMPANY
OF OREGON,
an Oregon corporation;
Farmers Insurance Exchange,
a foreign corporation;
Farmers Group, Inc.,
a foreign corporation;
and Mid-Century Insurance Company,
a foreign corporation,
*Respondents.*

9910-11479; A128598

150 P3d 20

Terrell W. Oxford, Texas, and Jeremy J. Brandon, Texas, argued the cause for appellant. On the briefs were Susman Godfrey, LLP, Texas, and Daniel J. Gatti and Gatti, Gatti, Maier, Krueger, Sayer & Assoc., and Tom D'Amore and D'Amore & Associates, and James Nelson and Nelson & MacNeil, and Christopher Hardman and Law Office of CR Hardman.

James N. Westwood argued the cause for respondents. With him on the brief were Lois O. Rosenbaum and Stoel Rives LLP.

Before Haselton, Presiding Judge, and Armstrong and Rosenblum, Judges.

HASELTON, P. J.

## HASELTON, P. J.

Plaintiff Jose Gonzales appeals, assigning error to the allowance of summary judgment in favor of defendants, various Farmers Insurance-related companies.[1] The only issue presented is whether, under the terms of his automobile coverage with defendant, plaintiff is entitled to recover payment for his vehicle's "inherent diminished value" (IDV) following a collision. Specifically, is plaintiff entitled, in addition to payment for the cost of repair to the vehicle, to recover for the difference in his vehicle's fair market value before and after the collision? The trial court determined that a limitation of liability provision in the auto policy precluded recovery for IDV. As amplified below, we conclude that *Dunmire Co. v. Or. Mut. Fire Ins. Co.*, 166 Or 690, 114 P2d 1005 (1941), and *Rossier v. Union Automobile Ins. Co.*, 134 Or 211, 297 P 498 (1930), which are to the contrary, are controlling and dispositive. Consequently, we reverse and remand.

Summary judgment is proper if the "pleadings, depositions, affidavits, declarations and admissions on file show that there is no genuine issue as to any material fact and that the moving party is entitled to a judgment as a matter of law." ORCP 47 C. In reviewing the allowance of summary judgment, we draw all reasonable inferences in favor of plaintiff, who was the nonmoving party. *West v. Allied Signal, Inc.*, 200 Or App 182, 187, 113 P3d 983 (2005).

We state the material facts consistently with that standard of review. In January 1998, plaintiff's 1993 Ford pickup truck, which was insured under the terms of a "car policy Oregon" issued by defendant, was damaged in a collision. As a result, plaintiff incurred $6,993.40 in repair costs, which defendant paid, minus the deductible. However, notwithstanding those repairs, the pickup could not be completely restored to its "pre-accident condition." Consequently,

---

[1] Plaintiff Bathke's complaint was voluntarily dismissed. The defendants in this case are Farmers Insurance Company of Oregon, Farmers Insurance Exchange, Farmers Group, Inc., and Mid-Century Insurance Company. For convenience, we refer to the remaining plaintiff as "plaintiff" and to the defendants collectively as "defendant."

even after being repaired, the vehicle's market value was diminished.

Plaintiff subsequently filed a complaint against defendant, alleging that, under the terms of the auto insurance policy, defendant was obligated not only to pay for the cost of repairing the pickup, but also to compensate plaintiff for loss corresponding to IDV:

> "In the event Defendants elect to repair a vehicle, they are obligated to restore the vehicle to its pre-loss condition. This includes the amount of loss of value to the vehicle that occurs as a result of the accident that is not repaired, called diminished value. Diminished market value occurs in situations where an insured vehicle has sustained damage such that the vehicle cannot be repaired to its pre-loss condition. Even after being repaired, these vehicles are worth less than similar vehicles that are in their original condition. Diminished market value is a loss which is not excluded by Defendants' insurance policy."

Defendant moved for summary judgment, contending that, under the terms of the auto policy, its liability was limited to the actual cost of repairs. In so contending, defendant relied on various provisions of the policy, particularly its "Limits of Liability" provision. The collision coverage provision of the policy states, "We will pay for **loss** to **your insured car** caused by **collision** less any applicable deductibles." (Boldface in original.) The policy, in turn, defines "Loss" as "direct and accidental loss of or damage to **your insured car**, including its equipment." (Boldface in original.) The "Limits of Liability" provision provides, in pertinent part:

**"Limits of Liability**

"[Defendant's] limits of liability for **loss** shall not exceed:

"1.    The amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation."[2]

---

[2] Defendant does not contend that the policy's definition of "loss" does not include diminution of value. Rather, defendant argues that any recovery of IDV is precluded by the "Limits of Liability" provision.

(Boldface in original.) The policy further provides that "[w]e will pay the **loss** in money or repair or replace damaged or stolen property." (Boldface in original.) Finally, under "Rights and Responsibilities," the policy provides that "[t]he insured has the right to payment for the loss in money or repair or replacement of the damaged or stolen property, at the option of [defendant]."

Plaintiff, in opposing summary judgment, argued that the policy's "Limits of Liability" provision did not preclude recovery for IDV-related loss. Plaintiff argued, in part, that the Oregon Supreme Court's decisions in *Dunmire Co.* and *Rossier* were dispositive.[3]

The trial court allowed summary judgment, concluding:

"Any ambiguity in an insurance contract is to be construed against the insurer according to a long line of Oregon cases. The essential question then becomes whether or not there is any 'ambiguity' in the 'repair' clause taken in context with the options that Defendant has regarding reimbursement. The three options are not equal in kind or in value to the insured. A cash payment would likely take into [account] factors different from a decision to repair the vehicle (which is only an option if the vehicle is repairable)

---

[3] Before the trial court, as on appeal, the parties cited myriad decisions from other jurisdictions addressing claims under auto insurance policies for recovery of IDV-related loss. Specifically, plaintiff cites *MFA Ins. Co. v. Citizens Nat. Bank of Hope*, 260 Ark 849, 545 SW2d 70 (1977); *Hyden v. Farmers Ins. Exchange*, 20 P3d 1222 (Colo Ct App 2000), *cert den* (Colo 2001); *State Farm Mut. Auto. Ins. Co. v. Mabry*, 274 Ga 498, 556 SE2d 114 (2001); *Dodson Aviation v. Rollins, et al.*, 15 Kan App 2d 314, 807 P2d 1319, *rev den*, 249 Kan 779 (1991); *Federal Ins. Co. v. Hiter*, 164 Ky 743, 176 SW 210 (1915); *Ciresi v. Globe & Rutgers Fire Ins. Co.*, 187 Minn 145, 244 NW 688 (1932); and *Weems v. Service Fire Ins. Co. of New York*, 181 Tenn 1, 178 SW2d 377 (1944).

In response, defendant cites *Siegle v. Progressive Consumers Ins. Co.*, 819 So 2d 732 (Fla 2002); *Sims v. Allstate Ins. Co.*, 365 Ill App 3d 997, 851 NE2d 701 (2006); *Allgood v. Meridian Sec. Ins. Co.*, 836 NE 2d 243 (Ind 2005); *Given v. Commerce Ins. Co.*, 440 Mass 207, 796 NE2d 1275 (2003); *Davis v. Farmers Ins. Co. of Arizona*, 140 NM 249, 142 P3d 17 (NM Ct App), *cert granted*, 140 NM 543 (2006); *Culhane v. Western Nat. Mut. Ins. Co.*, 704 NW2d 287 (SD 2005); *Black v. State Farm Mut. Auto. Ins. Co.*, 101 SW3d 427 (Tenn Ct App 2002), *appeal den* (Tenn 2003); and *American Mfrs. Mut. Ins. Co. v. Schaefer*, 124 SW3d 154 (Tex 2003). Defendant also argues that the weight of authority identified in George J. Couch, 12 *Couch on Insurance* § 177:19 (3d ed 1998), supports the denial of IDV claims under similar circumstances.

and the replacement option could arguably include diminution of market value. 'Replace' is defined as 'to put back into former position' or 'take the place of' (American Heritage Dictionary, Third Ed., p. 1157) and thus, putting something back into former position could arguably include the former 'undamaged' position.

"However, 'repair' is defined (in the same Dictionary p. 1156) as meaning 'to restore to a sound condition after injury or damage' which was done in this case. The 'repair' option chosen by Plaintiff in this case along with the standard definition of 'repair' coupled with no specific mention anywhere about 'diminution of market value' requires me to grant Defendant Farmers['s] motion for summary judgment."

The trial court, in so concluding, did not refer to either *Dunmire Co.* or *Rossier*.

■    On appeal, as before the trial court, plaintiff invokes *Dunmire Co.* and *Rossier*. Plaintiff contends that both cases are dispositive and that the circumstances in *Dunmire Co.*, in particular, were materially indistinguishable from those presented here. Defendant, as described more fully below, counters that *Rossier* is materially distinguishable; that *Dunmire Co.* and *Rossier* were both wrongly decided in the first instance; and that, in all events, neither *Dunmire Co.* nor *Rossier* is controlling because both were premised on a method of insurance policy construction that has been superseded by the analysis described in *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 836 P2d 703 (1992). Defendant further contends that, under the analysis described in *Hoffman Construction Co.*, it is entitled to prevail. For the reasons that follow, we agree with plaintiff.

We begin, inevitably, with *Rossier* and *Dunmire Co.* In *Rossier*, the plaintiff purchased a Studebaker sedan, which was involved in an accident after it had been driven only 140 miles. 134 Or at 215. The car was insured under a policy issued by the defendant. That policy provided coverage for property damage to the vehicle caused by an accidental collision. The policy further provided as follows:

" 'The company's liability for loss or damage under this endorsement by reason of any one collision is limited to the

actual cost of replacement of the property damaged or destroyed, and in no event, to exceed the true cash value of the automobile current at the time loss or damage occurs.' "

*Id.* at 213.

The defendant insurer took the position that, under the policy, it was obligated to pay only "the actual cost of replacement of damaged or broken parts." *Id.* at 212. The plaintiff, however, brought an action seeking to recover the difference between the Studebaker's precollision "fair cash value" ($1,535) and its post-collision fair cash value (which, the plaintiff alleged, was "no greater * * * than $450"). *Id.* at 212-13. The trial court, over the defendant's objections, instructed the jury consistently with the plaintiff's construction of the policy, and the jury awarded damages of $950. *Id.* at 212.

On appeal, the defendant assigned error to the instruction on damages. The Supreme Court affirmed, concluding that that instruction comported with the proper construction of the policy—and, particularly, with its limitation of liability provisions:

"That an insurer may, by contract, limit its liability, is well recognized. It is also uniformly held that if there is any doubt or ambiguity in the terms of such limitation it will be resolved in favor of the insured. An insurance policy, like any other kind of contract, must be considered in its entirety and conflicting clauses reconciled if possible.

"Unquestionably the primary object or purpose of the plaintiff was to be indemnified against loss or damage to his automobile resulting from accidental collision. It is common knowledge that the nature and extent of damage to a car may be such that replacement or repair of broken parts will not compensate the insured for his loss. * * * To award him damages for the actual cost of replacement of broken or damaged parts would, indeed, be inadequate relief. That there would be diminution of value as the result of collision as here shown seems obvious. In many instances the injury to the automobile may be of such nature and extent that, after repairs have been made, there will be no diminution of value. Under such circumstances cost of repairs would be equivalent to the difference between the value of the automobile before and after collision.

"In addition to the general provision indemnifying the assured against loss or damage by reason of accidental collision, the policy provided for a limitation of liability 'to the actual cost of replacement of the property damaged or destroyed.' *'Replacement' as thus used means, in our opinion, the restoration of the property to its condition prior to the injury. Such restoration may or may not be accomplished by repair or replacement of broken or damaged parts. It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car.*"

*Id.* at 214-16 (emphasis added).

As support for that conclusion, the court noted that its holding comported with the "weight of authority" of other courts that had resolved the same coverage issue. *Id.* at 216. The *Rossier* court quoted with particular approval the following language from *Standard Accident Ins. Co. of Detroit v. Richmond*, 297 SW 879, 880 (Tex Civ App 1927):

" 'The injury being one for which the appellant was liable under the terms of the policy, the appellee had the right to claim full compensation for his loss. That loss was the difference between the value of the car before and after the injury. Appellant had, in effect, contracted to do all that reasonably could be done to restore the car to its original condition in the way of making repairs and replacements, or to pay the full amount of damages sustained. The testimony indicates that the principal damage was to the body of the car. *Witnesses testified that this could not be restored to its original condition by merely being repaired.* It was damaged to the extent that this was impossible, they stated. Appellant contends that it was only required to pay the cost of restoring the car to substantially the same condition it was in before the injury. *That is true, if the words "substantially the same" mean a condition which made the car equal in value to what it was before the injury. Anything less than that would not be adequate compensation for the loss sustained.*' "

*Rossier*, 134 Or at 216 (emphasis added).

In *Dunmire Co.*, the insured vehicle, a Packard, was damaged in a collision. The policy issued by the defendant insurer limited the insurer's liability to " 'what it would * * * cost to repair or replace the automobile, or parts thereof, with

other of like kind and quality.' " 166 Or at 699. The defendant contended that the plaintiff's recovery should be limited to the amount (roughly $600) that the plaintiff was charged for repair of the vehicle. *Id.* Conversely, the plaintiff contended that the proper measure of recoverable loss under the policy was the difference between the Packard's preaccident and post-accident market value (approximately $1,000). As in *Rossier*, the trial court agreed with the plaintiff.

Again, the Oregon Supreme Court affirmed, quoting with approval its holding in *Rossier* regarding the meaning of "replacement." *Dunmire Co.*, 166 Or at 699-700 (quoting *Rossier*, 134 Or at 215-16). The Supreme Court noted, particularly, that the policy language in *Dunmire Co.* was "identical" to that in *Stoops v. First American Fire Ins. Co.*, 160 Tenn 239, 22 SW2d 1038 (1930), which it had cited with approval in *Rossier*:

> "In [*Stoops*] the policy of insurance contained language identical with that employed in the policy here before us, in relation to the liability of the insurer in the event of damage to the automobile. The court held that the clause was ambiguous and required construction. It further held that the recovery by the assured was not limited to the cost of repairs and replacements, unless such repairs and replacements restored the automobile to as good condition as it was in before it was damaged."[4]

*Dunmire Co.*, 166 Or at 700.

Here, defendant does not contend that the "Limits of Liability" provision in its coverage is materially distinguishable from the limitation of liability construed and applied in *Dunmire Co.* Rather, defendant contends that both *Dunmire Co.* and *Rossier* have been overruled *sub silentio* because their rationales have been "superseded" by (in defendant's characterization) the "recently developed" methodology for interpretation of insurance policies stated in *Hoffman Construction Co.*[5]

---

[4] The Tennessee Court of Appeals has distinguished *Stoops* and declined to adhere to it as binding authority with respect to the recoverability of IDV in analogous circumstances. *See Black v. State Farm Mut. Auto. Ins. Co.*, 101 SW3d 427, 429 (Tenn Ct App 2002), *appeal den* (Tenn 2003).

[5] Defendant also identifies various factual distinctions between the circumstances presented here and those in *Rossier*. However, with respect to *Dunmire*

Defendant's position rests, and depends, on a false premise. *Hoffman Construction Co.* did not alter long-standing principles of Oregon law governing construction of insurance policies. To be sure, *Hoffman Construction Co.* may have synthesized and amplified those principles in an especially useful fashion, but it made no bones about its antecedents. Further, *Rossier* and *Dunmire Co.* comported, at least ostensibly, with the same methodology.

■ In *Hoffman Construction Co.*, the court summarized the methodology under Oregon law for construing insurance policies. As with other contracts, in interpreting insurance policies, " '[t]he primary and governing rule * * * is to ascertain the intention of the parties.' " 313 Or at 469 (quoting *Totten v. New York Life Ins. Co.*, 298 Or 765, 770, 696 P2d 1082 (1985)) (brackets in *Hoffman Construction Co.*). The court specifically addressed the proper application of the maxim that ambiguous terms in an insurance policy are to be construed against the drafter, *i.e.*, the insurer, and explained that that "tie-breaking" maxim does not apply when disputed language is merely *literally* subject to more than one plausible interpretation. Rather, a true ambiguity supporting the application of the "construe against the drafter" maxim exists

> "*only* if two or more plausible interpretations of that term withstand scrutiny, *i.e.*, continues to be reasonable, after the interpretations are examined in the light of, among other things, the particular context in which that term is used in the policy and the broader context of the policy as a whole."

313 Or at 470 (emphasis in original).

*Hoffman Construction Co.* did not purport to announce any new method of construction. Indeed, as support for the propositions quoted above, the court quoted precedents dating to 1954, *viz.*, *I-L Logging Co. v. Mfgrs. & Whlse. Ind. Exc.*, 202 Or 277, 317, 275 P2d 226 (1954).[6] In short,

---

*Co.*, defendant's sole contentions both in briefing and at oral argument were that (1) *Dunmire Co.* was wrongly decided and (2) in all events, given *Hoffman Construction Co.*, *Dunmire Co.* is no longer good law.

[6] The portion of *I-L Logging Co.* cited in *Hoffman Construction Co.*, in turn, cited cases and treatises dating back to 1939. *See, e.g.*, 202 Or at 317-18, 336; *see also Clark Motor Co. v. United Pac. Ins. Co.*, 172 Or 145, 149, 139 P2d 570 (1943)

*Hoffman Construction Co.* did not transform Oregon law governing the interpretation of insurance policies. As plaintiff correctly observes, *"Hoffman* neither announced a new rule nor renounced an old one. If it did anything new, it simply unpacked what has always been the rule."

*Dunmire Co.* and *Rossier* (albeit construing different policy language) comported with that methodology. They explicitly addressed the meaning of the term "replace" or "replacement"—and, to the extent that any ambiguity remained after considering the parties' intentions as expressed in the totality of the policy, resolved any remaining question regarding the limitations of liability in favor of the plaintiff insureds.[7]

It may be—and we imply no view on the matter—that, as defendant contends, *Dunmire Co.* and *Rossier* were wrongly decided in the first instance. But neither has been implicitly abrogated by some subsequent material change in Oregon law governing the construction of insurance policies. To the extent, if any, that the Oregon Supreme Court may have erred in applying then-applicable—and still applicable—principles of policy construction, defendant's recourse lies with that court. *See Schiffer v. United Grocers, Inc.*, 143 Or App 276, 284, 922 P2d 703 (1996), *rev'd*, 329 Or 86, 989 P2d 10 (1999) ("Those decisions, however old, are still good—or, at least, binding—law. * * * We are not in the business of overruling decisions of the Oregon Supreme Court.").

Reversed and remanded.

---

(reiterating principle that insurance policy, including limitation of liability provision, is to be construed as a whole: "All parts and clauses must be construed to determine if and how far one clause is modified, limited, or controlled by others[.]").

[7] *Rossier* recited the rule for construing ambiguous statutes against the insurer, but never explicitly determined whether the provision at issue was, in fact, ambiguous. *See* 134 Or at 214-17. Similarly, as noted, *Dunmire Co.* relied upon the Tennessee decision, *Stoops*, in which a similar policy provision was held to be ambiguous and was, thus, construed against the insurer. 166 Or at 700. The court explained, and relied upon, the Tennessee court's reasoning, but never explicitly held that the provision before it was ambiguous. *Id.*