Argued and submitted September 6, 2007, decision of Court of Appeals affirmed;
judgment of circuit court reversed, and case remanded to circuit court for further
proceedings October 23, 2008

Jose GONZALES,
*Respondent on Review,*

*v.*

FARMERS INSURANCE COMPANY OF OREGON,
an Oregon corporation;
Farmers Insurance Exchange,
a foreign corporation;
Farmers Group, Inc.,
a foreign corporation;
and Mid-Century Insurance Company,
a foreign corporation,
*Petitioners on Review.*

(CC 9910-11479; CA A128598; SC S054486)

196 P3d 1

James Westwood, of Stoel Rives LLP, Portland, argued the cause and filed the briefs for petitioners on review.

Jeremy Brandon, of Susman Godfrey, LLP, Dallas, Texas, argued the cause for respondent on review. Daniel J. Gatti, of Gatti, Gatti, Maier, Krueger, Sayer & Assoc., Salem, filed the briefs for respondent on review. With him on the briefs were Tom D'Amore, D'Amore & Associates, Portland, James Nelson, Nelson & MacNeil, Albany, Christopher Hardman, Portland, and Terry Oxford, Susman Godfrey, LLP, Dallas, Texas.

DURHAM, J.

## DURHAM, J.

This is an action on an automobile insurance policy. Plaintiff's insured vehicle suffered property damage in an accident. Defendants[1] paid for repairs to the vehicle, but the repairs did not restore the vehicle to its preaccident condition. Defendants contended that they were responsible for only the cost of the repairs. Plaintiff claimed that the policy made defendants liable for plaintiff's entire "loss" and that, if the attempted repair could not restore the vehicle to its pre-accident condition, then defendants were responsible for the diminution of the value of the vehicle due to the accident.

The trial court granted defendants' motion for summary judgment. The Court of Appeals reversed. Citing two decisions from this court, the Court of Appeals determined that an insurer in these circumstances must restore the vehicle to its preloss condition or, if it could not do so, pay the insured the difference in the repaired vehicle's fair market value before and after the collision. *Gonzales v. Farmers Ins. Co.*, 210 Or App 54, 150 P3d 20 (2006), *citing Dunmire Co. v. Or. Mut. Fire Ins. Co.*, 166 Or 690, 114 P2d 1005 (1941), and *Rossier v. Union Automobile Ins. Co.*, 134 Or 211, 297 P 498 (1930). For the reasons expressed below, we affirm the decision of the Court of Appeals.

The Court of Appeals opinion sets forth the pertinent facts:

"In January 1998, plaintiff's 1993 Ford pickup truck, which was insured under the terms of a 'car policy Oregon' issued by defendant[s], was damaged in a collision. As a result, plaintiff incurred $6,993.40 in repair costs, which defendant paid, minus the deductible. However, notwithstanding those repairs, the pickup could not be completely restored to its 'pre-accident condition.' Consequently, even after being repaired, the vehicle's market value was diminished."

*Gonzales*, 210 Or App at 57. Defendants did not compensate plaintiff for the alleged diminished value of his truck.

---

[1] The defendants in this case are Farmers Insurance Company of Oregon, Farmers Insurance Exchange, Farmers Group, Inc., and Mid-Century Insurance Company (collectively, "defendants"). Additionally, the complaint brought by the other named plaintiff, Al Bathke, was voluntarily dismissed. The trial court did not certify a class.

Plaintiff, along with another individual, brought a class action against defendants. Plaintiff alleged that his automobile insurance policy required defendants, when they elected to repair a vehicle that had suffered property damage, to restore the vehicle to its preloss condition. Additionally, plaintiff alleged that that obligation required defendants to pay for the amount of loss of value to the vehicle if the vehicle could not be restored to its preloss condition, called "diminished value." Based on those allegations, plaintiff asserted claims for breach of contract, breach of the implied duty of good faith and fair dealing, and unjust enrichment.

Defendants moved for summary judgment, arguing that the policy did not cover diminished value. Instead, defendants argued, the policy obligated defendants to repair plaintiff's vehicle. Defendants contended that the plain and ordinary meaning of the word "repair" in the policy did not incorporate a duty to pay diminished value. Plaintiff responded that the plain meaning of "repair" encompassed restoration of the vehicles preloss physical condition and, if that were not possible, payment for diminished value. The trial court agreed with defendants and granted defendants' motion. Plaintiff appealed and argued that Oregon precedent required an automobile insurer to fully repair the damaged vehicle and to pay for any remaining diminished value, unless the insurance policy expressly excluded such coverage. Plaintiff relied on two cases decided by this court more than 60 years ago: *Rossier* and *Dunmire*. Defendants asserted that more recent decisions issued by this court had superseded those cases and, in any event, that the cases were distinguishable or should be overruled. Defendants further argued that the policys plain wording did not require payment for diminished value.

The Court of Appeals agreed with plaintiff and reversed the trial courts decision. *Gonzales*, 210 Or App at 65. After reviewing *Rossier* and *Dunmire*, the Court of Appeals rejected defendants' argument that subsequent decisions issued by this court had superseded those cases. *Id.* at 60-63, 65. Instead, the Court of Appeals concluded that *Rossier* and *Dunmire* mandated the result that plaintiff sought. *Id.* at 65. Defendants sought review.

Before we turn to our analysis, we set forth the relevant wording from the insurance policy in some detail. The policy provides that defendants "will pay for loss to [the] insured car caused by collision less any applicable deductibles." The policy defines "loss" as "direct and accidental loss of or damage to [the] insured car, including its equipment." Defendants' liability for that loss is limited by the following provision:

**"Limits of Liability**

"Our limits of liability for loss shall not exceed:

"1.    The amount which it would cost to repair or replace damaged or stolen property with other of like kind and quality; or with new property less an adjustment for physical deterioration and/or depreciation."

The policy also describes how loss will be paid by defendants: "We will pay the loss in money or repair or replace damaged or stolen property." Finally, the policy outlines the rights and responsibilities of the insurer and the insured, and provides, in part:

**"RIGHTS AND RESPONSIBILITIES**

"* * * * *

"The insured has *the right to payment for the loss in money or repair or replacement* of the damaged or stolen property, *at the option of the* [*insurer*]."

(Boldface and capitalization in original; emphasis added.) The policy includes no definition of "repair." Neither does it expressly include or exclude coverage for diminished value in those terms.

We begin our analysis by noting that this case calls for the interpretation of the terms of the automobile insurance policy that defendants issued. This case does not call on the court to decide the principles applicable generally to diminished value claims in property damage disputes of all kinds.

In interpreting an insurance policy, we seek to ascertain the intent of the parties. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992).

We determine the parties' intent by examining the terms of the insurance policy. *Id.* If the policy expressly defines the term in question, we apply that definition. *Holloway v. Republic Indemnity Co. of America*, 341 Or 642, 650, 147 P3d 329 (2006). If the policy does not define the term, we first look to the ordinary meaning of the term. *Id.* We also consider "the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman Construction Co.*, 313 Or at 470. If the term has only one plausible interpretation, we apply that interpretation and conduct no further analysis. *Id.* If, after those steps, the term remains susceptible to two or more reasonable interpretations, we resolve any doubt as to the meaning of that term against the insurer. *Holloway*, 341 Or at 650 (citations omitted). With that analytical framework in mind, we turn to the policy at issue.

The policy contains an unambiguous promise by defendants to pay plaintiff "for loss to your insured car caused by collision * * *" and defines "loss" to mean "direct and accidental loss of or damage to your insured car, including its equipment." (Boldface omitted.) The policy also entitles plaintiff "to payment for the loss in money or repair or replacement of the damaged or stolen property," at defendants' option.

The parties' central dispute turns on the meaning of the word "repair" in the policy. Specifically, plaintiff argues that "repair" includes restoration of the preloss condition and value of the insured property, while defendants argue that "repair" refers to only the restoration of the function and appearance of the insured property. Not surprisingly, the parties offer different definitions of "repair." Defendants offer the following definition from *Webster's Third New Int'l Dictionary*: "**1 a** : to restore by replacing a part or putting together what is torn or broken * * *. **b** : to restore to a sound or healthy state." *Webster's Third New Int'l Dictionary* 1923 (unabridged ed 2002).

Plaintiff, on the other hand, contends that defendants definition is incomplete and cites other definitions from *Webster's*: "**2** : to make good : REMEDY * * *. **3** : to make up for: compensate for." *Id.* at 1923. Plaintiff also faults defendants for failing to include a definition of "restore," because it is

part of the definition of "repair." "Restore" means "to bring back to or put back into a former or original state" *Id.* at 1936. Based on those definitions, plaintiff asserts that "repair" includes the duty to restore the vehicles value.

Despite their differences, the definitions of "repair" cited by both plaintiff and defendants focus on the restoration of property, either to its former state or to a healthy state. Another source, *Black's Law Dictionary*, defines "repair" as "[t]o mend, remedy, restore, renovate[;] [t]o restore to a sound or good state after decay, injury, dilapidation or partial destruction." *Blacks Law Dictionary* 1298 (6th ed 1990). Like the definition from *Webster's*, that definition focuses on the restoration of property to a former state.

An interpretation of the same or similar policy terms in this court's prior case law can supply helpful contextual evidence of the intent that underlies the use of those terms in the policy in question here. The parties acknowledge that two prior decisions by this court are pertinent to that inquiry, although, as noted, they disagree about the legal effect of those cases. We turn next to a consideration of that contextual evidence.

This court's two previous decisions addressed whether similar automobile insurance policies required payment for diminished value when the insurer had not restored or could not restore the vehicle to its preloss condition. The first case, *Rossier,* 134 Or 211, addressed the issue of the proper measure of property damages under an automobile insurance policy. The policy contained a general provision indemnifying the insured against loss or damage by reason of accidental collision. The policy also provided that the insurer's liability was limited to " 'the actual cost of replacement of the property damaged or destroyed, and in no event, to exceed the true cash value of the automobile current at time loss or damage occurs.' " *Id.* at 213 (quoting the policy at issue). The court determined that that provision contemplated "that the insurer had the right to replace or repair broken or damaged parts in an effort to put the automobile in substantially the same condition as it was prior to the collision." *Id.* at 214.

The court addressed the question of the proper measure of the insurer's monetary liability as a matter of contract interpretation:

> "Unquestionably the primary object or purpose of the plaintiff was to be indemnified against loss or damage to his automobile resulting from accidental collision. It is common knowledge that the nature and extent of damage to a car may be such that replacement or repair of broken parts will not compensate the insured for his loss. In the instant case plaintiff had a new car. It had been driven only 140 miles. A mechanic called as an expert witness, speaking of the damage to the automobile, said, 'It was a wrecked car, you absolutely can't put a wrecked car back in the condition it was before the wreck.' The frame was sprung; rear axles bent; upholstery seared with acid; doors battered; rear wheel broken; windows shattered and otherwise injured. To award him damages for the actual cost of replacement of broken or damaged parts would, indeed, be inadequate relief. That there would be diminution of value as the result of collision as here shown seems obvious. In many instances the injury to the automobile may be of such nature and extent that, after repairs have been made, there will be no diminution of value. Under such circumstances cost of repairs would be equivalent to the difference between the value of the automobile before and after collision."

*Id.* at 215.

The court also determined that the policy term "replacement" embraced the *repair or replacement* of damaged property:

> " 'Replacement' as thus used means, in our opinion, the restoration of the property to its condition prior to the injury. Such restoration may or may not be accomplished by repair or replacement of broken or damaged parts. It cannot be said that there has been a complete restoration of the property unless it can be said that there has been no diminution of value after repair of the car."

*Id.* at 215-16.

The court also relied on and quoted a court decision from Texas that had construed a similar limitation of liability clause:

> " 'The injury being one for which the appellant was liable under the terms of the policy, the appellee had the right to claim full compensation for his loss. That loss was the difference between the value of the car before and after the injury. Appellant had, in effect, contracted to do all that reasonably could be done to restore the car to its original condition in the way of making repairs and replacements, or to pay the full amount of damages sustained. The testimony indicates that the principal damage was to the body of the car. Witnesses testified that this could not be restored to its original condition by merely being repaired. It was damaged to the extent that this was impossible, they stated. Appellant contends that it was only required to pay the cost of restoring the car to substantially the same condition it was in before the injury. That is true, if the words "substantially the same" mean a condition which made the car equal in value to what it was before the injury. Anything less than that would not be adequate compensation for the loss sustained.' "

*Id.* at 216 (quoting *Standard Accident Ins. Co. of Detroit v. Richmond*, 297 SW 879, 880 (Tex Cir App 1927)). On the basis of the foregoing reasoning, the court in *Rossier* concluded that the trial court had applied the correct measure of damages:

> "The conclusion reached in the instant case that the proper measure of damages is the difference between the fair cash value of the car before and after the injury is supported by the weight of authority[.]"

*Id.* (citations omitted).

*Rossier* is helpful in resolving the present dispute, even though the court in that case did not separately define the term "repair." The court rejected the contention that an insurer can satisfy its obligation to restore a vehicle to its preaccident condition without diminished value solely by paying for the cost of repairs. According to *Rossier*, if repairs to a vehicle do not restore the vehicle to its preaccident condition, then the correct measure of damages is "the difference between the fair cash value of the automobile before and after the collision." *Id.* at 212.

In *Dunmire*, 166 Or 690, the second case relied upon by plaintiff and the Court of Appeals, this court addressed a

slightly different provision than that at issue in *Rossier*. In *Dunmire*, the policy limited the insurers liability to " 'what it would then cost to repair or replace the automobile, or parts thereof, with other of like kind and quality.' " *Id.* at 699 (quoting policy). The trial court had awarded to the plaintiff in that case the difference between the value of the car before the accident and after the accident, minus the deductible. *Id.* This court relied on *Rossier* as well as a decision from Tennessee, *Stoops v. First Am. Fire Ins. Co.*, 160 Tenn 239, 22 SW2d 1038 (1930), which involved the same policy wording that was before this court in *Dunmire*. 166 Or at 700. In *Stoops*, the Tennessee Supreme Court had concluded that that policy wording was ambiguous and held that the plaintiff's recovery was not limited to the cost of repair unless repair had restored the automobile to its condition prior to the accident. *Dunmire*, 166 Or at 700 (discussing *Stoops*).[2] On the basis of *Rossier* and *Stoops*, this court concluded that the trial court did not err in refusing to limit plaintiffs recovery to the cost of repairing the damaged automobile. *Id.*

Defendants contend that *Rossier* and *Dunmire* are distinguishable and, if they are not distinguishable, that those cases should be overruled. In *Rossier*, this court interpreted the policy term "replacement" to embrace replacement or repair of broken parts. The policy clause at issue in *Rossier*

---

[2] In *Stoops*, the Tennessee Supreme Court held that the insurer in that case was liable to the insured for the depreciation in the value of his automobile resulting from the accident, where repairs and replacement would not restore the automobile to its original value. 22 SW2d at 1040. The policy included, as one of its "general conditions," a provision that the liability of the insurer "shall in no event exceed the limit of liability, if any, stated in Paragraph C (actual cash value, less $50.00), *nor what it would then cost to repair or replace the automobile or parts thereof with other of like kind and quality.*" *Id.* at 1038 (emphasis in original; internal quotation marks omitted). In analyzing that policy wording, the court reviewed the other parts of the policy. *Id.* at 1039. The policy's first clause provided that the defendant insured the plaintiff for a term specified, "to an amount not exceeding the actual cash value of the property at the time any loss or damage occurs, nor, in any event, the limits of liability, if any[.]" *Id.* (internal quotation marks omitted). The limitation of liability, contained in the "general conditions" section and quoted above, created a "double alternative," according to the court, but did not clarify what measure of liability applied to a particular circumstance. *Id.* In light of that "alternative and ambiguous limitation of liability," the court concluded that the alternative limitations should be applied to "afford the insured the full protection contemplated." *Id.*

did not contain the word "repair." Here, however, the limitation of liability clause provides for either repair or replacement, at defendants' option. Thus, although the reasoning in *Rossier* is helpful and persuasive in addressing the instant case, the specific term construed in *Rossier* is not precisely the same as that at issue in this case.

We disagree, however, that *Dunmire* is distinguishable. The phrase containing the word "repair" in the policy in *Dunmire* was virtually identical to the policy wording at issue here. As we noted, the policy in *Dunmire* limited the insurer's liability to "what it would then cost to repair or replace the automobile, or parts thereof, with other of like kind and quality." 166 Or at 699 (quoting policy). Defendants point out that *Dunmire* does not state whether the policy at issue gave the insurer the option, as the policy at issue here does, to pay the cost of repair or to pay the cost of replacement. That is an important distinction, defendants contend, because, in the absence of the provision expressly giving the insurer such a choice, the court in *Dunmire* would have construed the policy in a way that would have afforded the insured more protection.

We disagree with defendants' reading of *Dunmire*. The policy in that case phrased the insurer's obligation in the disjunctive: "repair or replace." Thus, the policy did afford the insurer the opportunity to satisfy its liability by choosing either to repair or replace the damaged vehicle. The policy under consideration here afforded defendants the same substantive choice. Defendants' contention provides no basis for distinguishing *Dunmire*.

■ We conclude that *Dunmire*'s interpretation of "repair" applies to the provision at issue here. Under *Dunmire*, "repair" encompasses the restoration of the vehicle to its condition prior to the collision. *Dunmire*, 160 Or at 699-700. We see no reason to overrule that well-established legal interpretation. Therefore, under the policy at issue, if an attempted "repair" does not or cannot result in a complete restoration of the vehicles preloss condition, the vehicle is not "repair[ed]," and the resulting diminution of value of the

vehicle remains a "loss to [the] insured car caused by collision" for which defendants are liable under their policy.[3]

The particular context of the word "repair" in the instant policy also demonstrates that defendants' obligation includes payment for diminished value where repair cannot restore a vehicle to its preloss condition. *See Hoffman Construction Co.*, 313 Or at 470 (explaining that policy interpretation requires us to examine the "particular context in which that term is used in the policy and the broader context of the policy as a whole").

The policy requires defendants to pay for "loss to [the] insured car caused by collision less any applicable deductibles." The policy defines loss broadly: "direct and accidental loss of or damage to [the] insured car." Defendants do not dispute that the policy definition of loss is broad enough to include diminished value. "Repair," therefore, when viewed in the context of this policy, which contains a broad definition of loss, incorporates the concept of restoration of a vehicle's preloss condition or, if the insurer cannot or will not restore the vehicle to that condition, payment for diminished value.

In the "limits of liability" provision, the word "repair" appears in the same sentence as the phrase "of like kind and quality." Plaintiff contends that that phrase modifies both the word "repair" and the word "replace." Because the word "quality" in that phrase signifies value, plaintiff argues, "repair" must restore the automobile to the same quality or condition that existed before the accident. Significantly, the provision at issue in *Dunmire* contained the same phrase. On the basis of *Dunmire*, we agree that the phrase "of like kind and quality" is another factor supporting our conclusion that defendants are obligated to restore the damaged vehicle or, if the vehicle cannot be restored, to compensate plaintiff accordingly.

---

[3] We note that Dunmire was decided in 1941. Thus, the definition of repair adopted in *Dunmire* has been part of the legal landscape for well over 60 years. Nothing in *Dunmire* or this case, however, prevents insurers from including a definition of repair in automobile policies that excludes diminished value from coverage. According to plaintiffs, many insurance policies do exclude such coverage.

We hold that "repair," as used in the policy at issue in this case, requires defendants to restore plaintiffs vehicle to its preloss physical condition. If defendants do not or cannot so restore plaintiffs vehicle, defendants must compensate plaintiff for the diminished value of the vehicle.

Defendants assert that plaintiff's claim, when reduced to its essence, would lead to an absurd result: if an insurer has restored a vehicle to its preloss condition, an insurer nevertheless is obligated to pay for diminished value that results from only stigma attached to that vehicle because the vehicle has been involved in a collision. Defendants argue that the supposed negative perception of prospective buyers regarding a repaired car's worth following a collision is not included in the policy's definition of "repair."

In this case, plaintiff does not claim damages for stigma, as defendants describe that concept above. Plaintiff submitted an affidavit in opposition to defendants' summary judgment motion that stated that he was "not satisfied that [his] vehicle had been repaired with like kind and quality parts, and was not restored to its preloss condition. The vehicle had a number of problems that did not exist before." Plaintiff also submitted two expert affidavits describing the inability of body shops to restore preloss physical condition in certain circumstances. Because this case involved a genuine dispute about whether defendants had restored the vehicle to its preloss condition, we need not decide whether the policy requires payment for a claim based solely on "stigma."

The trial court granted summary judgment to defendants because it concluded that a vehicle is "repaired," within the meaning of the policy, when the insurer restores it to a sound condition after damage. That premise permitted the trial court to disregard plaintiff's factual contentions that, despite defendants' repair efforts, the vehicle still was damaged and had not been restored to its preloss condition. However, that approach alters the interpretation of the policy term "repair" that this court has followed consistently since *Dunmire*.

The trial court erred by granting summary judgment to defendants. Summary judgment is appropriate only when there is no genuine issue of material fact and when the

moving party is entitled to judgment as a matter of law. ORCP 47 C. Based on the affidavits submitted by plaintiff, a genuine issue of material fact exists as to whether defendants' attempt to repair plaintiff's vehicle restored the vehicle to its preloss condition. If it did not, then defendants' selection of the repair option under the policy has not compensated plaintiff for the loss to his insured vehicle, and he remains entitled to either a genuine repair of the vehicle, as we have discussed, or compensation for the diminished value of the unrepaired vehicle. Summary judgment was therefore inappropriate.

The decision of the Court of Appeals is affirmed. The judgment of the circuit is reversed, and the case is remanded to the circuit court for further proceedings.