Argued and submitted October 20, 2011, affirmed March 14, 2012

CAPITOL SPECIALTY INSURANCE CORPORATION,
a Wisconsin corporation,
*Plaintiff-Respondent,*

*v.*

CHAN & LUI, INC.,
an Oregon corporation;
dba Golden Star Restaurant and Lounge;
King Tung Chan,
an individual;
and San Chun Chan,
an individual,
*Defendants,*

*and*

Robert BLANCK,
Personal Representative for the
Estate of Jessica Blanck;
and Lorie Shaddix,
Personal Representative for the
Estate of Kristyne Shaddix,
*Defendants-Appellants.*

Multnomah County Circuit Court
100507760; A146888

274 P3d 238

Elden Rosenthal argued the cause for appellants. With him on the briefs were John Devlin and Rosenthal, Greene & Devlin, P.C.

Jonathan W. Henderson argued the cause for respondent. With him on the brief were William G. Earle and Davis Rothwell Earle & Xochihua, P.C.

Before Schuman, Presiding Judge, and Wollheim, Judge, and Nakamoto, Judge.

SCHUMAN, P. J.

**SCHUMAN, P. J.**

This case requires us to interpret an insurance policy issued by plaintiff to the owners of a restaurant. The policy contained "liquor liability" coverage insuring the owners in the event that they were found to be liable for serving alcohol to a customer who subsequently harmed others. The dispute arose after a customer who drank to intoxication, allegedly at the restaurant, caused an automobile accident in which two persons were killed. Defendants are the personal representatives of the estates of the deceased.[1] The accident occurred while the restaurant's insurance policy was in effect, four months before the liquor liability limit was raised from $1 million to $3 million. The estates contend that the amended policy limits applied retroactively to the start of the policy period, including the date of the fatal accident, so as to cover the full amount of the damages, which, the parties agreed at settlement, were $3 million. Plaintiff maintains that the policy amendment applies only prospectively from the date of the policy change endorsement. Like the trial court, we conclude that the estates' interpretation of the policy change endorsement is not plausible; the enhanced coverage applied prospectively only. We therefore affirm.

The material facts are not in dispute. On March 24, 2007, plaintiff issued an insurance policy to the owners and operators of the Golden Star Restaurant and Lounge in Portland. The policy declarations pages contained a caption stating the policy number and the "POLICY PERIOD," specified as "3/24/2007 [to] 3/24/2008." (Uppercase in original.) The policy provided, among other things, that plaintiff "will pay those sums that the insured becomes legally obligated to pay as damages because of 'injury' to which this insurance applies[,] if liability for such 'injury' is imposed on the insured by reason of the selling, serving[,] or furnishing of any alcoholic beverage." Further, such "injury" must have "occur[ed] during the policy period * * *." The liquor liability policy limit was $1 million. The policy also insured the restaurant building.

---

[1] The restaurant owners are also defendants, but they are not parties on appeal. Hereafter, we refer to defendants on appeal as "the estates."

On April 29, 2007, decedents of the estates were killed in an automobile accident. The estates claim that the accident was caused by excessive alcohol consumption at the Golden Star by the driver.

Four months *after* the accident, on September 14, 2007, plaintiff and the restaurant owners agreed on a Policy Change Endorsement that added $2 million in "umbrella coverage" to the liquor liability coverage. That change, the parties agree, raised the coverage to $3 million for claims for injury arising out of the sale of alcohol. The revised policy contained a "Policy Change Endorsement" that had a caption that was identical to the caption on the original declarations page, including the same policy number and the same policy period. Below the caption and the names of the insured and the agent, the endorsement stated, "EFFECTIVE DATE OF CHANGE: 8/27/2007" (uppercase in original). That date was some four months after the fatal accident involving the estates' decedents. Below the "effective date of change" information, the endorsement contained the following:

"$290    Annual Return Premium

"$166    Return Premium Due

".5730    Pro Rate Factor"

The parties agree that the "return premium due" is .5730 times $290 and that the amount of time remaining in the "policy period" after the effective date of the change endorsement is approximately .5730 of the period. The same page of the policy change endorsement also contains the following:

"BELOW IS A DESCRIPTION OF THE CHANGES:

"DELETING THE BUILDING COVERAGE FOR LOCATION #1, BLDG #1 IN ITS ENTIRETY.

"ADDING UMBRELLA COVERAGE TO THE POLICY FOR LOCATION #1, BLDG #1

"* * * * *

"THIS CHANGE ENDORSEMENT WILL NOT BE USED TO AMEND POLICY CONDITIONS."

(Uppercase in original.) The parties agree that "Location #1" refers to the Golden Star.

In 2009, the estates filed wrongful death claims against the owners of the Golden Star and, pursuant to a settlement agreement, obtained a judgment awarding each estate $1.5 million in damages. Also pursuant to the settlement, plaintiff then filed this action, seeking a judicial declaration that the $2 million umbrella coverage did not apply retroactively to the date of the accident. Both parties moved for summary judgment. The estates argued that the umbrella coverage was retroactive to the beginning of the policy period, March 24, 2007. They relied, first, on the fact that the headings on the endorsement and declarations pages unambiguously stated the "policy period" was "03/24/2007 [to] 03/24/2008," which encompassed the date of the accident, and that the policy provided coverage for injuries that occur during the "policy period." Second, they relied on the statement in the policy change endorsement that "This change endorsement will not be used to amend policy conditions," which, they maintained, meant that the policy change endorsement did not alter plaintiff's obligation to cover damages resulting from any injuries during the policy period. Plaintiff, for its part, relied primarily on the statement that the "EFFECTIVE DATE OF CHANGE" was after the accident that killed the estates' decedents, and on the presumption against retroactive application of insurance policies.

The trial court concluded that the policy had only one plausible interpretation: plaintiff's. The court then granted plaintiff's motion for summary judgment, denied the estates' motion for summary judgment, and entered a general declaratory judgment in favor of plaintiff, from which the estates now appeal. For the reasons that follow, we agree with the trial court.

In an appeal from a judgment that results from cross-motions for summary judgment, if both the granting of one motion and the denial of the other are assigned as error, then both are subject to review. *Eden Gate, Inc. v. D&L Excavating & Trucking, Inc.*, 178 Or App 610, 622, 37 P3d 233 (2002). Where there are no issues of material fact, as in this case, we review a trial court's summary judgment ruling on each motion for errors of law. *Hazell v. Brown*, 238 Or App 487, 495, 242 P3d 743 (2010), *rev allowed*, 350 Or 573 (2011).

The issue on appeal, therefore, is the interpretation of the umbrella insurance contract, which presents a question of law. *Hoffman Construction Co. v. Fred S. James & Co.*, 313 Or 464, 469, 836 P2d 703 (1992).

In interpreting an insurance policy, we seek to ascertain the intent of the parties, *id.* at 469, as interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. New York Life Ins. Co.*, 298 Or 765, 771, 696 P2d 1082 (1985). We determine the parties' intent by examining the terms of the insurance policy. *Hoffman*, 313 Or at 469. If the policy expressly defines the term in question, we apply that definition. *Gonzales v. Farmers Ins. Co.*, 345 Or 382, 387, 196 P3d 1 (2008). If the policy does not define the term, we first look to the term's ordinary meaning. *Id.* We also consider "the particular context in which that term is used in the policy and the broader context of the policy as a whole." *Hoffman*, 313 Or at 470. If the term has only one plausible interpretation, we apply that interpretation and conduct no further analysis. *Gonzales*, 345 Or at 387. If, after those steps, the term remains susceptible to two or more reasonable interpretations, we resolve any doubt as to the meaning of that term against the insurer. *Id.*

Neither of the provisions on which the estates rely can carry the weight with which the estates would burden them. It is true, as the estates argue, that the term "policy period" is unambiguous; it means the chronological period during which the policy at issue is operative. But the fact that a policy is in existence and forms a contract between the insured and the insurer does not, by any means, necessarily mean that every type of coverage or every policy limit that is in existence at one time during the policy period remains in existence during the entire period and cannot be changed by the mutual agreement of the parties. Thus, there is no conflict between the provision stating the term of the policy period and the policy change endorsement that lists mutually agreed-upon changes and states when they take effect. Indeed, if the estates' reading of the policy—and there is only one policy, identified on both the original and the change endorsement by the same policy number—were correct, then the change endorsement not only retroactively increased the liquor policy limit, but also retroactively deleted the property

insurance. No "ordinary purchaser of insurance," *Totten*, 298 Or at 771, could possibly believe that that was the meaning of the policy change endorsement.

The estates' argument based on the statement that "THIS CHANGE ENDORSEMENT WILL NOT BE USED TO AMEND POLICY CONDITIONS" is also implausible. Indeed, it is difficult to discern just how the estates believe that the statement helps their argument. They apparently contend that the statement means that defendant remains obligated to cover all occurrences during the policy period, notwithstanding the changes. Yet, it is difficult for us to understand how the estates can contend that the language freezes into existence plaintiff's obligation retroactively to cover occurrences without also freezing into existence the very $1 million policy limit that the estates want increased to $3 million. Further, Section IV of the original liquor liability insurance policy, issued March 24, 2007, lists nine separate, numbered conditions, such as bankruptcy and duties in the event of injury, claim, or suit. Neither the policy period nor any liability limit is listed as a condition.

Plaintiff's explanations of the "policy period" language and the "not be used to amend policy conditions" language, on the other hand, are straightforward and plausible. The "policy period" information, along with the named insured, the agent, and the policy number, together comprise identifying information for the original policy that was modified by the endorsement, and those modifications went into effect on the "EFFECTIVE DATE OF CHANGE: 8/27/2007," after the fatal accident. The period simply represents the length of the contractual relationship between the insured and the insurer, and not the period during which the policy may not be amended by mutual assent. If the term "policy period" had the meaning that the estates attribute to it, then the "effective date" language could have no meaning at all. Thus, the estates' interpretation of the policy renders a conspicuous provision superfluous, while plaintiff's interpretation does not.

Finally, we note that the "pro rate factor" on the change endorsement is also consistent with plaintiff's interpretation of the policy language. The factor ".5730" indicates

that a portion of the policy period had already elapsed at the time the umbrella policy was "effective" on August 27, 2007, and 211 days, approximately 57% of a year, remained until the end of the policy period, March 24, 2008. The prorating of one of the premiums for the change in coverage illustrates the parties' intent that the umbrella coverage apply prospectively to the remainder of the policy period.

Because plaintiff's interpretation that the liquor liability umbrella coverage was intended to cover injuries only after August 27, 2007, is the only plausible interpretation of the policy language, "we apply that interpretation and conduct no further analysis." *Gonzales*, 345 Or at 387. Therefore, the umbrella policy issued September 14, 2007, did not retroactively fully cover the estates' damages, and the trial court did not err.

Affirmed.