NOTICE: NOT FOR PUBLICATION.
UNDER ARIZONA RULE OF THE SUPREME COURT 111(c), THIS DECISION DOES NOT CREATE
LEGAL PRECEDENT AND MAY NOT BE CITED EXCEPT AS AUTHORIZED.

IN THE

# ARIZONA COURT OF APPEALS
### DIVISION ONE

---

In the Matter of:
THE DOBYNS FAMILY TRUST dated July 10, 1998

KAMILLE MULCAIRE, as the Personal Representative of the Estate of
THOMAS E. MULCAIRE and MICHAEL MULCAIRE,
*Petitioners/Appellants,*

*v.*

DAVID MONGINI and CECIL WALLACE, Co-Trustees,
*Respondents/Appellees.*

No. 1 CA-CV 13-0612

FILED 12-11-2014

---

Appeal from the Superior Court in Yavapai County
No. V1300PB201280021
The Honorable Patricia A. Trebesch, Judge

**AFFIRMED**

---

COUNSEL

Dennis P. Bayless PC, Cottonwood
By Dennis P. Bayless
*Counsel for Petitioners/Appellants*

J. Leslie McLean PLLC, Cottonwood
By J. Leslie McLean
*Co-Counsel for Respondents/Appellees*

and

Choi & Fabian PLC, Chandler
By Veronika Fabian and Hyung S. Choi
*Co-Counsel for Respondents/Appellees*

---

**MEMORANDUM DECISION**

Judge Andrew W. Gould delivered the decision of the Court, in which Presiding Judge Margaret H. Downie and Judge Samuel A. Thumma joined.

---

**G O U L D**, Judge:

¶1 Thomas Mulcaire and Michael Mulcaire (the "Mulcaires"), appeal from the trial court's judgment in favor of David Mongini and Cecil Wallace (the "Co-Trustees"). For the reasons discussed below, we affirm.

**FACTS AND PROCEDURAL HISTORY**

¶2 This appeal is based on a dispute between family members over the administration of two trusts. In 1998, Erma and Faires Dobyns (the "Dobyns") established the Dobyns Family Trust (the "Family Trust"). The Dobyns served as the initial co-trustees of the Family Trust. The beneficiaries of the Family Trust are Erma Dobyns' four children from a prior marriage: Sheila Mongini, Michael Mulcaire, Patricia Wallace, and Thomas Mulcaire.

¶3 The Family Trust was, by its express terms, fully revocable while both of the Dobyns were alive, and it placed no restrictions on how the Dobyns used the assets in the trust. The Family Trust provided that upon the death of either Erma or Faires Dobyns it became irrevocable, and was to be divided into two trusts: the Marital QTIP Trust ("Marital Trust") and the Decedent's Trust.

¶4   The terms of the Family Trust govern the administration of both the Marital Trust and the Decedent's Trust.  The Family Trust provides that upon the death of either Erma or Faires as the surviving spouse, the remaining principal in the Marital Trust is to be added to the Decedent's Trust and distributed according to the terms of the Decedent's Trust, in this case to the four beneficiaries equally.

¶5   The initial assets conveyed to the Family Trust were three parcels of real property.  There were no bank accounts, investment accounts, or personal property listed as assets in the Family Trust.

¶6   In December 2003, the Dobyns sold a portion of one of the parcels of property in the Family Trust for approximately $910,000.  The Dobyns received $100,000 in cash, an assigned promissory note from Robert Flynn for $260,000,[1] and a promissory note from G.M. Fratelli for approximately $550,640 (the "Fratelli Note").  At the time of the sale, the Family Trust was still revocable because both of the Dobyns were living; therefore, under the terms of the Family Trust, the Dobyns were not obligated to deposit any of the cash they received from the sale into the trust.

¶7   In January 2004, Erma and Faires Dobyns opened a Chase Bank Account ending in 1779 (the "Chase Account").  The Chase Account was originally titled to Faires Dobyns or Erma Dobyns or Sheila Mongini, as individuals and not as Trustees of the Family Trust.  After Erma Dobyns died on May 17, 2005, the Chase Account was retitled to Faires Dobyns or Sheila Mongini, as individuals and not as Trustees of the Family Trust.  The signature card for the Chase Account did not state whether there was a right of survivorship in the account.

¶8   Upon the death of Erma, Faires Dobyns retained an attorney, Alexandra Shroufe, to assist in allocating the assets in the Family Trust into the Marital Trust and Decedent's Trust.  Ms. Shroufe prepared the allocation of assets for Faires Dobyns to sign and approve on August 24, 2009.  However, in the allocation, Ms. Schroufe erroneously listed the Chase Account as an asset of the Marital Trust.

¶9   On August 29, 2009, Faires Dobyns, the sole remaining trustee, appointed David Mongini, the husband of Sheila Mongini, and

---

[1]  The Robert Flynn Note was paid off before the completion of the sale.

Cecil Wallace, the husband of Patricia Wallace, "to act as current [successor] Co-Trustees with him" of the Marital and Decedent's Trusts.

¶10      When Faires Dobyns discovered that he had erroneously allocated the Chase Account to the Marital Trust, he directed Shelia Mongini and the Co-Trustees to remove the Chase Account from the Marital Trust. In October 2011, Ms. Shroufe prepared an amendment to the August 24, 2009 allocation removing the Chase Account from the Marital Trust; at the direction of Faires Dobyns, the amendment was approved by the Co-Trustees.

¶11      Faires Dobyns died on December, 11, 2011. The Mulcaires sent a written request for a trust accounting to the Co-Trustees on February 9, 2012. The Co-Trustees sent a preliminary accounting along with some financial documents to the Mulcaires on February 29, 2012. Less than two weeks later, the Mulcaires filed a Petition for Remedy of Breach of Trust ("Complaint") seeking an accounting and removal of the Co-Trustees.

¶12      The Co-Trustees then retained Phil Schutte, a certified public accountant, to complete an accounting of the trusts, and submitted Mr. Schutte's accounting to the Mulcaires on June 21, 2012. The trial court then ordered the Co-Trustees to prepare a second accounting, which Co-Trustees did, again, through the services of Mr. Schutte.

¶13      The court held a bench trial on three separate days in September and October 2012 and in May 2013. Following the trial, the court found the accountings provided by the Co-Trustees (1) satisfied their fiduciary duties under the trusts, and (2) established that all of the assets of the trusts were accounted for and intact. Further, the court found there was no evidence showing the loss of any trust asset or depreciation of value of any trust asset while the Co-Trustees were responsible for administering the trusts. Finally, the court determined that the Chase Account was not a trust asset and belonged to Sheila Mongini.

¶14      Based on the above findings, the trial court determined that the Co-Trustees did not materially breach their fiduciary duties to the Mulcaires, and denied the relief sought in the Complaint. The Mulcaires timely appealed.

## DISCUSSION

¶15      We apply a de novo standard of review to the trial court's legal conclusions, *In re Estate of Newman*, 219 Ariz. 260, 265 ¶ 13, 196 P.3d

863, 868 (App. 2008), and we accept the trial court's factual findings unless they are clearly erroneous, *In re Estate of Zaritsky*, 198 Ariz. 599, 601 ¶ 5, 12 P.3d 1203, 1205 (App. 2000).

## I. Chase Account

¶16       The Mulcaires assert that the Co-Trustees violated their duty to control and protect trust assets by permitting Shelia Mongini to take possession of the funds in the Chase Account after Faires Dobyns' death. Ariz. Rev. Stat. ("A.R.S.") § 14-10809 (2014) (stating that trustees are under a duty to "take reasonable steps to take control of and protect trust property.")  The Mulcaires contend that the funds in the Chase Account were trust funds, and should have reverted to the Decedent's Trust upon the death of Faires Dobyns.

¶17       The Chase Account was a multiple party bank account that was titled to both Faires Dobyns and Sheila Mongini; both parties were authorized to use the account.  A.R.S. § 14-6201(5) (defining a multiple party account as "an account payable on request to one or more of two or more parties…").  Under A.R.S. § 14-6212, unless the terms of a multiple party account expressly state otherwise, upon the death of one party, the funds in the account are presumed to belong to the surviving party. A.R.S. § 14-6212(A) (stating that after the "death of a party, sums on deposit in a multiple party account belong to the surviving party or parties"); A.R.S. § 14-6212(C) (a deceased's net contribution to a multiple party account passes to the decedent's estate if the terms of account expressly designate it as a tenancy in common or provide that there is no right of survivorship);  *see also* A.R.S. §§ 14-6213(B), -6216 (B) (stating that "[a] right of survivorship arising from the express terms of the account, *section 14–6212* or a pay on death designation may not be altered by will.") (emphasis added).

¶18       Here, nothing in the terms of the Chase Account rebuts the statutory presumption that it was a multiple party bank account that belonged to Sheila Mongini after the death of Faires Dobyns.  The record shows that the Chase Account belonged to Sheila Mongini, and was not a trust asset.   As a result, the evidence supports the trial court's determination that the Co-Trustees had no duty to collect or control the funds in the Chase Account.

## II. The Fratelli Note

¶19       The Mulcaires argue that the records provided by the Co-Trustees do not account for all of the money paid under the Fratelli Note.

The Mulcaires allege the Co-Trustees breached their duty to protect trust assets by failing to investigate and provide an accounting for these funds. The Mulcaires have shown no error.

**¶20**  The basic rule for interpretation of a trust document is to ascertain the intent of the settlor.  *In re Estate of Zilles*, 219 Ariz. 527, 530 ¶ 8, 200 P.3d 1024, 1027 (App. 2008); *In re Gardiner's Estate*, 5 Ariz. App. 239, 240, 425 P.2d 427, 428 (1967).  Exculpatory provisions regarding trustees are enforceable with the exception of conduct "committed in bad faith or intentionally or with reckless indifference to the interest of the beneficiary, or of liability for any profit which Trustee has derived from a breach of trust."  Restatement (Second) of Trusts § 222(1) (1959).

**¶21**  By express provision, the Family Trust permits the Co-Trustees, as successor trustees, to "accept the trust assets delivered to [them] by or on behalf of [their] predecessor trustee as constituting the entire trust estate."  The Family Trust states that the Co-Trustees "shall not be required to take any action to recover further assets or investigate any acts done by any predecessor trustee."  Additionally, the Family Trust provides that as successor trustees, the Co-Trustees "shall not be personally liable for any act or omission of any predecessor trustee."

**¶22**  Based on the express language of the Family Trust, the Co-Trustees are not responsible for providing an accounting of the Fratelli Note.  The sale involving the Fratelli Note occurred in 2003, more than five years before the Co-Trustees' appointment.  In addition, at the time of the sale, the Dobyns were not required to deposit any of the funds from the Fratelli Note into the Family Trust.  *See supra*, ¶ 6.  Accordingly, the Mulcaires have shown no error in the trial court's findings concerning the Fratelli note.

## III. Impartiality

**¶23**  The Mulcaires claim the Co-Trustees beached their duty of impartiality by allowing Sheila Mongini to take possession of the funds in the Chase Account.  A.R.S. § 14-10803 ("If a trust has two or more beneficiaries, the trustee shall act impartially in investing, managing and distributing the trust property…").  However, because the Chase Account was not a trust asset, the Co-Trustees had no duty to collect or control the funds in the account for the benefit of the Mulcaires.  *See supra*, ¶ 22.

**¶24**  The Mulcaires also allege that the Co-Trustees breached their duty of impartiality by engaging in legal, factual and strategic planning

discussions with Mongini and her counsel to show that the Chase Account was not a trust asset.

¶25  We find no reversible error. The Co-Trustees were permitted to defend themselves after the Mulcaires sued them for breach of their duties. *See In re Estate of Thurston*, 199 Ariz. 215, ¶ 34, 221-22, 16 P.3d 776, 782-83 (App. 2000) (holding the estate's attorneys were entitled to appear and defend themselves without violating their duty of fairness to the beneficiaries). Both parties identified Sheila Mongini as a non-party witness with knowledge about the Chase Account. The Co-Trustees were entitled, in presenting their defense, to communicate with Sheila Mongini and her counsel to show that the Chase Account was not a trust asset. *Id.*

## IV. Accounting

¶26  Finally, the Mulcaires assert that the Co-Trustees failed to provide them with an accurate accounting of the trust property.

¶27  A trustee is required to keep beneficiaries "reasonably informed about the administration of the trust and of the material facts necessary for them to protect their interests." A.R.S. § 14-10813(A). In addition, a trustee "shall promptly respond to a beneficiary's request for information related to the administration of the trust" unless the trustee determines that "it is unreasonable under the circumstances to do so." *Id.*

¶28  The Co-Trustees submitted three accountings: (1) a preliminary accounting in February 2012; (2) a second accounting in June 2012; and (3) a third accounting in August 2012. The court accountant initially recommended that the trial court not approve the Co-Trustees' August 2012 accounting. However, after the Co-Trustees filed a response addressing the court accountant's concerns, the court accountant was able to determine that all of the trust assets were accounted for and intact. Based on the report of the court accountant and the trial court's review of all three accountings, the trial court determined that the Co-Trustees met their obligation to provide an accounting to the Mulcaires.

¶29  The record supports the trial court's finding that the Co-Trustees provided an accurate accounting of the trust property. Accordingly, we affirm.

**ATTORNEYS' FEES**

**¶30**          The Co-Trustees seek their attorneys' fees incurred for defending this appeal pursuant to A.R.S. § 14-11004.  We grant Co-Trustees' fee request, and direct Co-Trustees to file an application in compliance with Arizona Rule of Civil Procedure 21(c).

**CONCLUSION**

**¶31**          For the foregoing reasons, we affirm the judgment of the trial court.



Ruth A. Willingham · Clerk of the Court
F I L E D : ama