**QBE INSURANCE CORPORATION and Community Association Underwriters of America, Inc., Plaintiffs,**

v.

**CRESTON COURT CONDOMINIUM, INC., and Association of Unit Owners of Creston Court Condominium, Inc., Defendants.**

No. 03:13–cv–02255–PK.

United States District Court, D. Oregon.

Signed Nov. 1, 2014.

The matter is now before me pursuant to 28 U.S.C. § 636(b)(1)(B) and Federal Rule of Civil Procedure 72(b).

Because no objections to the Magistrate Judge's Findings and Recommendation were timely filed, I am relieved of my obligation to review the record *de novo*. *United States v. Reyna–Tapia*, 328 F.3d 1114, 1121 (9th Cir.2003) (en banc); *see also United States v. Bernhardt*, 840 F.2d 1441, 1444 (9th Cir.1988) (*de novo* review required only for portions of Magistrate Judge's report to which objections have been made). Having reviewed the legal principles *de novo*, I find no error.

## CONCLUSION

The Court ADOPTS Magistrate Judge Papak's Findings & Recommendation [48]. Accordingly, Plaintiffs' motion for summary judgment [16] is denied; Defendant Association's cross-motion for summary judgment [23] and Defendant Creston Court's cross-motion for summary judgment [26] are granted.

IT IS SO ORDERED.

Blair E. McCrory, Brian R. Talcott, Donald E. Templeton, Dunn Carney Allen Higgins & Tongue, LLP, Portland, OR, for Plaintiffs.

Christopher T. Carson, Kilmer Voorhees & Laurick, PC, James Lee Guse, Barker Martin, P.S., Portland, OR, for Defendants.

## ORDER

HERNANDEZ, District Judge:

Magistrate Judge Papak issued a Findings and Recommendation (# 48) on September 23, 2014, in which he recommends that this Court deny Plaintiffs' motion for summary judgment and grant Defendants' cross-motions for summary judgment.

## FINDINGS AND RECOMMENDATION

PAPAK, United States Magistrate Judge:

Plaintiffs QBE Insurance Corporation ("QBE") and Community Association Underwriters of America, Inc. ("CAU") (collectively, "plaintiffs") filed this action against Creston Court Condominium, Inc. ("Creston Court") and the Association of Unit Owners of Creston Court Condominium, Inc. ("the Association"), seeking a declaration that plaintiffs have no duty to defend Creston Court in an underlying lawsuit that the Association filed in the Circuit Court for the County of Multnomah. Now before the court are plaintiffs' motion for summary judgment (# 16), the Association's cross-motion for summary

judgment (# 23), and Creston Court's cross-motion for summary judgment (# 26). For the reasons set forth below, plaintiffs' motion for summary judgment should be denied and the Association's cross-motion for summary judgment and Creston Court's cross-motion for summary judgment should be granted.

## FACTUAL BACKGROUND

### I. Parties

Plaintiff QBE is a corporation that underwrites insurance policies. Decl. of Marianne Heineman ("Heineman Decl."), # 18, ¶ 2. Plaintiff CAU serves as the managing general agent of QBE. *Id.* Defendant Creston Court is an Oregon corporation that, as set forth below, "designed, developed, renovated, and managed the conversion" of an apartment building into the Creston Court Condominium ("the Condominium"), an Oregon condominium organized under Oregon Revised Statute ("ORS") Section 100.405. Ex. 1, Second Decl. of James Guse ("Second Guse Decl."), # 40–1, at 2–4. Creston Court was' the developer and declarant of the Condominium.[1] *See id.* Defendant the Association acts as the governing body of the Condominium. *Id.* at 2.

### II. Insurance Policies

Beginning on December 27, 2006, plaintiffs insured "Creston Court Condominium" under a general-liability policy. Ex. 1, Decl. of James Guse ("Guse Decl."), # 22–1, at 1; Heineman Decl., # 18, ¶ 2; Ex. 1, Heineman Decl., # 18–1, at 1–62.

This policy was effective from December 27, 2006, to December 27, 2007. Ex. 1, Guse Decl., # 22–1, at 1; Heineman Decl., # 18, ¶ 2. Subsequent policies provided coverage from December 27, 2007, to December 27, 2013. Heineman Decl., # 18, ¶ 2. The subsequent policies contained nearly identical coverage, terms, limits, and exclusions [2] as the first policy but listed the insured as the "Association of Unit Owners of Creston Court Condominium" rather than "Creston Court Condominium." *Id.*

Attached to each policy was the "Condominium Association Insurance Policy" form. *Id.* ¶ 3; Ex. 1, Heineman Decl., # 18–1, at 1–62. The Condominium Association Insurance Policy provides, in relevant part:

> Throughout this policy the words "you" and "your" refer to the Named Insured shown in the "Declarations."
>
> . . .
>
> We will have the right and duty to defend the insured against any claim or "suit" seeking damages payable under VII. GENERAL LIABILITY COVERAGES SECTION. . . . We will have no duty to defend the insured against any "suit" seeking damages for "bodily injury," "property damage," "personal injury," or "advertising injury" to which this insurance does not apply.
>
> . . .
>
> With respect to VII.A. "BODILY INJURY" AND "PROPERTY DAMAGE," VII.B "PERSONAL INJURY" AND

---

1. Oregon law defines "declarant" as "a person who records a declaration under ORS [Section] 100.100 or a supplemental declaration under ORS [Section] 100.110." Or.Rev. Stat. § 100.005(11). A "developer" is "a declarant or any person who purchases an interest in a condominium from declarant, successor declarant or subsequent developer for the primary purpose of resale." Or.Rev.Stat. § 100.005(13).

2. Beginning with the third policy, effective from December 27, 2008, through December 27, 2009, coverage was expanded to include directors' and officers' liability. Heineman Decl., # 18, ¶ 2. The directors' and officers' liability coverage is not at issue in this case.

"ADVERTISING INJURY" and VIII. GENERAL LIABILITY MEDICAL PAYMENTS SECTION each of the following is an insured:

1. You.

. . .

4. Any person, other than your "employee," or any organization while acting as your real estate manager.

5. Your individual unit owners, but only for liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.

However, the insurance afforded with respect to the developer in the developer's capacity as a unit owner does not apply to liability for acts or omissions as a developer.

Ex. 1, Heineman Decl., # 18–1, at 4, 24, 30 (emphasis omitted). The Condominium Association Insurance Policy also includes certain exclusions, including an exclusion for "[p]roperty you own, rent or occupy or which is owned, rented or occupied by another but which you are legally responsible to monitor or maintain." *Id.* at 28.

### III. Underlying Lawsuit [3]

Creston Court purchased an apartment building and converted it into the Condominium, making a number of improvements such as repairing and renovating the exterior siding, repairing and renovating windows, and repairing and renovating "substantially the whole roof." Ex. 1, Second Guse Decl., # 40–1, at 4. Creston Court also inspected and approved the exterior cladding, windows, and sliding glass doors that were not replaced and inspected and approved the electrical services, plumbing, and other mechanical services. *Id.* at 4–5. Reliance Property Management, Inc. ("Reliance") performed some of these repairs and renovations and "collaborated with" Creston Court in performing Creston Court's duties as declarant of the Condominium. *Id.* at 3. After the conversion was completed, Creston Court "and/or" Reliance marketed and sold the "common elements" and individual units in the Condominium to private purchasers ("the Owners"). *Id.* at 5. Creston Court "and/or" Reliance also managed and controlled the Association, including setting an operating budget for the Association, until the Association was turned over to the Owners. *Id.*

In 2013, the Association filed the underlying lawsuit against, among other entities, Creston Court and Reliance, alleging that "deficiencies in the repair, renovation and conversion of the Condominium" caused, and will continue to cause, extensive property damage. *Id.* at 8. Specifically, the Association pleads eight claims against Creston Court and Reliance, including: (1) negligence in the construction, repair, or renovation of the Condominium and the marketing and selling of the Condominium units; (2) breach of contract arising out of Creston Court's and Reliance's failure to deliver the Condominium in the condition described to the Owners as an inducement to execute their respective sale agreements; (3) breach of the express warranty Creston Court and Reliance made to each Owner as required under ORS Section 100.185; (4) breach of the implied warranties of workmanlike construction and fit-

---

**3.** The following facts are taken from the third amended complaint filed in Case No. 1306–08001 in the Circuit Court for the County of Multnomah ("underlying lawsuit"). The complaint in the underlying lawsuit does not include any dates. The parties appear to agree that the relevant acts took place sometime between December 27, 2006, and December 27, 2007, as the focus of the parties' motions is on the insurance policy covering that period.

ness for habitation; (5) negligent misrepresentation; (6) violation of ORS Section 100.770, which prohibits a condominium developer from, among other things, employing any scheme to defraud, or making any untrue statement in connection with the sale of a condominium; (7) violation of ORS Section 100.775, which makes it unlawful for a developer to authorize or use false or misleading statements in any advertisement of a condominium; and (8) breach of fiduciary duty arising out of Creston Court's and Reliance's control of the Association's operations, expenditures, repairs, and actions prior to the turnover date. *See id.* at 12–24.

On or about October 2, 2013, Creston Court sent plaintiffs a letter, tendering its defense to plaintiffs in the underlying lawsuit. Decl. of Richard Crooks, # 17, ¶ 2. On December 10, 2013, plaintiffs accepted the defense of Creston Court in the underlying lawsuit under a full reservation of rights. *Id.* ¶ 3.

## PROCEDURAL BACKGROUND

Plaintiffs filed this diversity action on December 19, 2013, requesting a declaration that, under the insurance policies at issue, plaintiffs have no duty to defend Creston Court in the underlying lawsuit. In addition to Creston Court, plaintiffs name the Association as a defendant, as the Association "may have an interest in the determination of whether or not the [insurance policies] provide coverage to Creston Court." Complaint, # 1, ¶ 18.

On May 9, 2014, plaintiffs filed a motion for summary judgment. On May 30, 2014, the Association filed its response in opposition to plaintiffs' motion for summary judgment, as well as a cross-motion for summary judgment. That same date, Creston Court filed its response in opposition to plaintiffs' motion for summary judgment, as well as a cross-motion for sum-

mary judgment. On June 13, 2014, plaintiffs filed a reply in support of their motion for summary judgment and a response in opposition to the Association's and Creston Court's cross-motions for summary judgment. On June 27, 2014, the Association filed a reply in support of its cross-motion for summary judgment and, on June 30, 2014, Creston Court filed a reply in support of its cross-motion for summary judgment.

After the motions were fully briefed, the Association filed the third amended complaint in the underlying lawsuit, which added an allegation that Creston Court and Reliance acted as real-estate managers. *See* Ex. 1, Second Guse Decl., # 40–1, at 5. On August 25, 2014, plaintiffs filed a supplemental memorandum addressing this new allegation. On September 2, 2014, the Association filed its supplemental response and, on that same date, Creston Court filed its supplemental response. The court heard oral argument on the motions on September 15, 2014. The motions are fully submitted and ready for decision.

## LEGAL STANDARD

Summary judgment is appropriate "if the movant shows that there is no genuine dispute as to any material fact and the movant is entitled to judgment as a matter of law." Fed.R.Civ.P. 56(a). A party taking the position that a material fact either "cannot be or is genuinely disputed" must support that position by citation to specific evidence of record, "including depositions, documents, electronically stored information, affidavits or declarations, stipulations (including those made for purposes of the motion only), admissions, interrogatory answers, or other materials"; by showing that the evidence of record does not establish either the presence or absence of such a dispute; or by showing that an opposing

party is unable to produce sufficient admissible evidence to establish the presence or absence of such a dispute. Fed. R.Civ.P. 56(c). The substantive law governing a claim or defense determines whether a fact is material. *See Moreland v. Las Vegas Metro. Police Dep't,* 159 F.3d 365, 369 (9th Cir.1998).

Summary judgment is not proper if material factual issues exist for trial. *See, e.g., Celotex Corp. v. Catrett,* 477 U.S. 317, 322, 106 S.Ct. 2548, 91 L.Ed.2d 265 (1986); *Anderson v. Liberty Lobby, Inc.,* 477 U.S. 242, 248, 106 S.Ct. 2505, 91 L.Ed.2d 202 (1986); *Warren v. City of Carlsbad,* 58 F.3d 439, 441 (9th Cir.1995). In evaluating a motion for summary judgment, the district courts of the United States must draw all reasonable inferences in favor of the nonmoving party, and may neither make credibility determinations nor perform any weighing of the evidence. *See, e.g., Reeves v. Sanderson Plumbing Prods., Inc.,* 530 U.S. 133, 150, 120 S.Ct. 2097, 147 L.Ed.2d 105 (2000); *Lytle v. Household Mfg., Inc.,* 494 U.S. 545, 554–55, 110 S.Ct. 1331, 108 L.Ed.2d 504 (1990).

On cross-motions for summary judgment, the court must consider each motion separately to determine whether either party has met its burden with the facts construed in the light most favorable to the other. *See* Fed.R.Civ.P. 56; *see also, e.g., Fair Hous. Council v. Riverside Two,* 249 F.3d 1132, 1136 (9th Cir.2001). A court may not grant summary judgment where the court finds unresolved issues of material fact, even where the parties allege the absence of any material disputed facts. *See Fair Hous. Council,* 249 F.3d at 1136.

## DISCUSSION

The parties agree that Oregon law governs the substantive issues raised in this case. The primary issued raised by the parties is whether Creston Court qualifies as an "insured" under the policy, such that plaintiffs' duty to defend is triggered. Plaintiffs alternatively contend that, even if Creston Court is an "insured" due to its status as a unit owner, the owned-property exclusion applies.

## I. Is Creston Court an "Insured" Within the Meaning of the Policy?

Before turning to the substantive issue of whether Creston Court is an insured, I address the parties' preliminary arguments regarding the burden of proof and the evidence to which the court may look in determining Creston Court's status as an insured.

### A. Burden of Proof

■ Plaintiffs argue that Creston Court bears the burden of proving that it is covered by the applicable insurance policy. *See* Plaintiffs' Memo. in Support of Motion for Summary Judgment, # 16, at 10 (citing *Emp'rs Ins. of Wausau v. Tektronix, Inc.,* 211 Or.App. 485, 509, 156 P.3d 105, 119 (Or.Ct.App.2007)). Creston Court and the Association respond that plaintiffs bear the burden of proving Creston Court is *not* an insured because plaintiffs chose to "preemptively file [a] declaratory judgment action[ ]." Association's Response in Opposition, # 21, at 4. Creston Court and the Association contend that *State Farm Fire and Casualty Co. v. Reuter,* 299 Or. 155, 700 P.2d 236 (Or.1985), is on point. In *State Farm,* a sexual-assault victim sued her attacker for damages. *Id.* at 157–58, 700 P.2d at 237–38. The attacker's insurance company, State Farm, brought an action seeking a declaration that the attacker's homeowner's insurance policy did not provide coverage under the circumstances. *Id.* at 158, 700 P.2d at 238. The Oregon Supreme Court noted that, because State Farm "chose to make a

preemptive strike by filing a declaratory judgment action[,] ... it had the burden of proving noncoverage." *Id.* at 166 n. 9, 700 P.2d at 243 n. 9 (citing *First Nat'l Bank v. Malady*, 242 Or. 353, 358, 408 P.2d 724, 726 (Or.1966)). Plaintiffs respond that *State Farm* and the other cases Creston Court and the Association cite are not on point, as each of the cases "involved a situation where the complained of act fell within the plain terms of the policy but the insurer sought to avoid coverage on some other grounds (e.g. collateral estoppel, non-permissive driver, unwritten fortuity requirement)." Plaintiffs' Reply in Support of Motion for Summary Judgment, # 28, at 5.

The general rule in Oregon is that the insured, rather than the insurer, bears the initial burden of proving coverage. *Derosiers v. Hudson Specialty Ins. Co.*, No. CV. 09–1201–PK, 2010 WL 1727258, at *3 (D.Or. Jan. 29, 2010) (citing *Emp'rs Ins. of Wausau*, 211 Or.App. at 509, 156 P.3d at 119). Once the insured satisfies his or her burden of proving coverage, the burden shifts to the insurer to prove that the policy excludes coverage. *Id.* (quoting *Emp'rs Ins. of Wausau*, 211 Or.App. at 509, 156 P.3d at 119). The question raised in this case is whether this general rule applies when the insurer preemptively files an action for a declaration as to its obligations under the policy. Although at least one treatise has noted that "[t]he burden of proof should not be displaced simply because the insurer has taken the initiative of instituting" an action for declaratory relief, 2 Allan D. Windt, Insurance Claims & Disputes § 8:13 (6th ed.2014), the Oregon Supreme Court appears to disagree, as illustrated by the cases Creston Court and the Association cite. Although plaintiffs argue that those cases merely stand for the proposition that the insurer bears the burden of proving

the applicability of a policy exclusion, the language in the cases is not so limited. For instance, in *First National Bank*, the Oregon Supreme Court found it "reasonable and fair that one who brings another into court should have the burden of proving the prima facie elements of his asserted claim." *First Nat'l Bank*, 242 Or. at 357–58, 408 P.2d at 726 (citation omitted) (internal quotation mark omitted). Likewise, in *United Pacific Insurance Co. v. Mazama Timber Products, Inc.*, 270 Or. 242, 527 P.2d 259 (Or.1974), the Oregon Supreme Court broadly stated, "when the insurer brings an action for a declaratory judgment to adjudicate the question of coverage and alleges that no coverage exists, the insurer has the burden of proving why there is no coverage." *Id.* at 245, 527 P.2d at 261.

Here, plaintiffs have brought an action for declaratory judgment. They argue that Creston Court is not covered by the insurance policy because Creston Court is not an "insured" within the meaning of the policy. In light of the Oregon cases discussed above, plaintiffs bear the burden of proving noncoverage.

## B. Evidentiary Objection

Next, Creston Court and the Association object to plaintiffs' reliance on the application of insurance, attached as Exhibit 2 to the Declaration of Marianne Heineman. Plaintiffs argue that the application is evidence that, at the time the parties entered into the contract for insurance, the parties intended to insure a condominium association, not a developer. *See* Plaintiffs' Memo. in Support of Motion for Summary Judgment, # 16, at 11. Specifically, plaintiffs note that the application "begins by asking what 'Community Association Type' the entity is that is seeking coverage" and that the box "Residential Condominium" is checked. *Id.* Furthermore, plaintiffs point

out that, under "Association's Name," the application lists "Creston Court Condominium." *Id.* Finally, plaintiffs note that the application is signed by Roger Baker, who lists his title as "Board Member." *Id.*

Creston Court and the Association argue that the court may not consider the application in deciding the pending motions for two reasons. First, Creston Court and the Association contend that the application is inadmissible under ORS Section 742.016, which prohibits the use of an insurance application as evidence in any action based on the insurance policy *unless* the application was delivered to the insured along with the insurance policy. Second, Creston Court and the Association contend that, in determining whether an insurance company has a duty to defend, a court may only look to the insurance policy and the complaint filed in the underlying action; in other words, the court may not consider extrinsic evidence.

### 1. ORS Section 742.016

■ ORS Section 742.016 provides, in relevant part:

> Except as provided in ORS 742.043, every contract of insurance shall be construed according to the terms and conditions of the policy. When the contract is made pursuant to a written application therefor, if the insurer delivers a copy of such application with the policy to the insured, thereupon such application shall become a part of the insurance policy. Any application that is not so delivered to the insured shall not be a part of the insurance policy and the insurer shall be precluded from introducing such application as evidence in any action based upon or involving the policy. Any oral representations by the insured that are not included in an application shall not be a part of the insurance policy and the insurer shall be precluded from introducing such representations as evidence

in any action based upon or involving the policy.

Or.Rev.Stat. § 742.016(1). Creston Court and the Association first note that, in this case, there is no evidence that plaintiffs delivered a copy of the application along with the insurance policy and, thus, it is not part of the insurance policy. Creston Court and the Association further note that this is an action "based upon or involving" the insurance policy. Thus, Creston Court and the Association argue that, pursuant to ORS Section 742.016, plaintiffs are precluded from introducing the application as evidence. In support of their argument, Creston Court and the Association rely on *First Mercury Insurance Co. v. Waterside Condominium Association,* No. 3:12–cv–02348–ST, 2013 WL 6383883 (D.Or. Dec. 5, 2013). In *First Mercury,* United States Magistrate Judge Janice M. Stewart found that an insurance application was inadmissible under ORS Section 742.016, noting that the "language of the statute does not mention the intended use of the application" but, rather, "broadly bars the use of the application 'as evidence in any action based upon or involving the policy.'" *Id.* at *3. In their reply in support of their motion for summary judgment, plaintiffs respond that the intent behind ORS Section 742.016 was not to preclude consideration of an insurance application in situations such as the one presented here, where the identity of the insured is in dispute.

As Judge Stewart aptly stated in *First Mercury,* ORS Section 742.016 is broadly written. It prohibits an insurer from introducing an application as evidence in any action based on an insurance policy, unless such application was delivered to the insured with the insurance policy. Here, plaintiffs do not dispute that this action is based on an insurance policy. Nor do plaintiffs dispute that the application was

not delivered to the insured with the insurance policy. Thus, under the plain language of ORS Section 742.016, plaintiffs are precluded from introducing the application as evidence in this action. Although plaintiffs contend that ORS Section 742.016 applies only when the application is being used to deny coverage based on an applicant's misrepresentations, nothing in the statute references the intended use of the application, as Judge Stewart noted in *First Mercury*. *See First Mercury*, 2013 WL 6383883, at *3; *see also* Or.Rev.Stat. § 174.010 ("In the construction of a statute, the office of the judge is simply to ascertain and declare what is, in terms or in substance, contained therein, not to insert what has been omitted, or to omit what has been inserted...."). Thus, I sustain Creston Court and the Association's evidentiary objection and shall not consider the insurance application attached as Exhibit 2 to Heineman's declaration.

### 2. Extrinsic Evidence

■ Creston Court and the Association also contend that Oregon law "preludes the use of extrinsic evidence to determine whether an insurer has a duty to defend." Association's Response in Opposition, # 21, at 10. Although Creston Court and the Association do not specifically mention what "extrinsic evidence" the court should refuse to consider, it appears that this argument is in reference to the insurance application. For the reasons set forth above, I find that the insurance application is not admissible pursuant to ORS Section

742.016. Nevertheless, because Creston Court and the Association submit extrinsic evidence for the court to consider in the event the court agrees with plaintiffs that extrinsic evidence is admissible,[4] I shall decide this issue.

■ Under Oregon law, "[w]hether an insurer has a duty to defend an action against its insured depends on two documents: the complaint and the insurance policy." *Ledford v. Gutoski*, 319 Or. 397, 399, 877 P.2d 80, 82 (Or.1994). Thus, "[i]n evaluating whether an insurer has a duty to defend, the court looks only at the facts alleged in the [underlying] complaint to determine whether they provide a basis for recovery that could be covered by the policy." *Id.* at 400, 877 P.2d at 82; *see also Am. Cas. Co. v. Corum*, 139 Or.App. 58, 65, 910 P.2d 1151, 1155 (Or.Ct.App.1996) (noting that "an insurer is limited to the pleadings and the policy in determining whether to defend" (footnote omitted)).

In *Fred Shearer & Sons, Inc. v. Gemini Ins. Co.*, 237 Or.App. 468, 240 P.3d 67 (Or.Ct.App.2010), the Oregon Court of Appeals recognized an exception to this general rule. In *Shearer*, the defendant, Gemini Insurance Company, insured TransMineral USA, a distributor of a stucco product. *Id.* at 470, 240 P.3d at 69. The plaintiff, Shearer, installed the stucco product on the exterior of a residence and, when the product allegedly failed, "the property owners sued their general contractor who, in turn, sued Shearer and TransMineral." *Id.*, 240 P.3d at 69.

---

4. Specifically, attached as Exhibit 2 to the Declaration of James Guse is a printout from the Oregon Secretary of State's website, showing the address of Creston Court Condominium, Inc., which is the same as the named insured's address, as listed in the Declarations.

 Moreover, as I note above, there are no dates listed in the complaint filed in the underlying action. Thus, it is unclear when

Creston Court converted the apartment building at issue into the Condominium. Nevertheless, the parties appear to agree that the December 27, 2006 to December 27, 2007 policy is the applicable policy. Thus, to the extent that Creston Court and the Association rely on the subsequent policies, which unambiguously name the Association as the insured, such policies constitute extrinsic evidence.

Shearer tendered its defense to Gemini, claiming to be covered under TransMineral's insurance policy, which covered "vendors" of TransMineral's products. *Id.*, 240 P.3d at 69. Gemini declined to defend Shearer in the underlying action. *Id.*, 240 P.3d at 69. Shearer then brought an action seeking a declaration that Gemini was required to defend Shearer pursuant to the insurance policy. *Id.*, 240 P.3d at 69. Gemini argued that the court was limited to considering the policy and the complaint in the underlying action and, because neither of those documents established that Shearer was an insured, Gemini had no duty to defend. *Id.* at 474, 240 P.3d at 71–72. The Oregon Court of Appeals disagreed:

> When the question is whether the insured is being held liable for conduct that falls within the scope of a policy, it makes sense to look exclusively to the underlying complaint. That complaint sets the boundaries of the insured's liability, and, as the court reasoned in *Isenhart*, "[i]f a contrary rule were adopted, requiring the insurer to take note of facts other than those alleged, the insurer frequently would be required to speculate upon whether the facts alleged could be proved." [*Isenhart v. Gen. Cas. Co. of Am.*, 233 Or. 49, 54, 377 P.2d 26, 28–29 (Or.1962) ].
>
> The same cannot be said with respect to whether a party seeking coverage is an "insured." The facts relevant to an insured's relationship with its insurer may or may not be relevant to the merits of the plaintiff's case in the underlying litigation. The plaintiff in the underlying case is required to plead facts that establish the defendant's liability; the plaintiff often is not required to establish the nature of the defendant's relationship to some other party or to an insurance company in order to prove a claim. In this case, for example, the

[property owners] had no reason to allege that Shearer sold or distributed TransMineral's products in the ordinary course of its business; nor did [the general contractor] need to allege that fact in order to make out its third-party claim against Shearer.

*Id.* at 476–77, 240 P.3d at 73 (first alteration in original).

Creston Court and the Association contend that *Shearer's* limited exception to the general rule precluding extrinsic evidence in duty-to-defend cases does not apply in this case. That is, Creston Court and the Association argue that *Shearer* applies only when the *insured* seeks to admit extrinsic evidence to establish that he or she qualifies as an insured. Moreover, Creston Court and the Association contend that the court should decline to consider extrinsic evidence because, unlike in *Shearer*, it is possible to determine whether Creston Court is an insured by looking at only the policy and the underlying complaint. This case, according to Creston Court and the Association, requires the court to interpret the policy language and plaintiffs' extrinsic evidence impermissibly goes to the parties' intent.

I agree with Creston Court and the Association's second argument. Although the parties disagree as to whether Creston Court might qualify for insured status as a unit owner or a real-estate manager, neither of the parties contend that it is impossible to resolve these questions by looking at only the underlying complaint and the policy. Rather, the extrinsic evidence the parties wish the court to consider goes to a different question—that is, what entity the parties intended to insure in the December 27, 2006 to December 27, 2007 policy when they listed "Creston Court Condominium" as the named insured. This issue is one of contract interpretation and, consequently,

extrinsic evidence is not permitted. *See Clarendon Am. Ins. Co. v. State . Farm Fire & Cas. Co.*, No. 3:11–CV–01344–BR, 2013 WL 54032, at *7 (D.Or. Jan. 3, 2013) (finding that the "narrow exception" outlined in *Shearer* does not apply when it is possible to determine from the complaint and the policy whether the individual seeking coverage is an insured).

## C. Analysis

 As set forth above, when determining whether an insurer has a duty to defend, the court looks at the facts alleged in the complaint in the underlying action and the insurance policy at issue. *See Ledford*, 319 Or. at 400, 877 P.2d at 82. "The insurer has a duty to defend if the complaint provides *any basis* for which the insurer provides coverage." *Id.*, 877 P.2d at 83 (citation omitted). In other words, even if the complaint alleges some conduct that is not covered by the policy but also alleges conduct that is covered by the policy, the insurer's duty to defend is triggered. *Id.*, 877 P.2d at 83. "Any ambiguity in the complaint with respect to whether the allegations could be covered is resolved in favor of the insured." *Id.*, 877 P.2d at 83 (citation omitted).

In this case, plaintiffs ask the court to find that they have no duty to defend Creston Court in the underlying lawsuit because Creston Court is not the named insured and does not qualify for insured status under the policy. Creston Court and the Association respond that they are entitled to summary judgment because Creston Court is a named insured, or, alternatively, it qualifies for insured status as either a unit owner or a real-estate manager.

### 1. Named Insured

 First, plaintiffs maintain that Creston Court is not the named insured, which is listed in the Declarations as "Creston Court Condominium." Ex. 1, Declaration of Christopher T. Carson, # 25–1, at 1. In response, Creston Court and the Association note that there is no entity named Creston Court Condominium; rather, that is the name of the property at issue. However, because "[t]he physical property is the thing being insured, not the person or entity whose interest require protection," Creston Court and the Association argue that "Creston Court Condominium" must refer to one of the only two entities that have ever had an interest in the Condominium—that is, Creston Court and the Association. Association's Response in Opposition, # 21, at 8. As the "Association of Unit Owners of Creston Court Condominium" is "completely dissimilar" to "Creston Court Condominium," Creston Court and the Association contend that the named insured must be Creston Court. *Id.* at 8.

 In interpreting insurance policies, it is the task of the court to ascertain the intent of the parties as interpreted from the perspective of the "ordinary purchaser of insurance." *Totten v. N.Y. Life Ins. Co.*, 298 Or. 765, 771, 696 P.2d 1082, 1086 (Or.1985). The parties' intentions must be determined through analysis of the provisions of the contract. *See Hoffman Constr. Co. v. Fred S. James & Co.*, 313 Or. 464, 469, 836 P.2d 703, 706 (Or. 1992); *see also* Or.Rev.Stat. § 742.016. If the contract's provisions are defined within the contract, the contractual definitions are applied. *See Gonzales v. Farmers Ins. Co.*, 345 Or. 382, 387, 196 P.3d 1, 3 (Or. 2008). In the absence of any contractual definition, the courts must look first to the plain meaning of the terms used in the contractual provisions, *see id.*, 196 P.3d at 3, and then to the policy context within which the provision appears, *see Hoffman*, 313 Or. at 470, 836 P.2d at 706. Following such analysis, if a provision has only one

✱

plausible interpretation, that interpretation is applied, and only if a provision is susceptible to two or more reasonable interpretations following such analysis will the ambiguity be resolved against the insurer. *See Gonzales,* 345 Or. at 387, 196 P.3d at 3.

Here, I am tasked with determining what the phrase "Creston Court Condominium" means as used in the insurance policy. Under the analysis prescribed in *Hoffman,* the first step is to determine whether the phrase is ambiguous—that is, whether it is susceptible of two or more plausible interpretations. *Hoffman,* 313 Or. at 470, 836 P.2d at 706. I find that it is. As Creston Court and the Association argue, "Creston Court Condominium" must refer to an entity, not a building. There are two entities to which it could refer—"Creston Court Condominium, Inc." and the "Association of Unit Owners of Creston Court Condominium, Inc."

Because it is an ambiguous term, I proceed to the second step under *Hoffman.* That is, I must determine whether both interpretations are reasonable in light of the context in which the term is used and the policy as a whole. *Id.* at 470, 836 P.2d at 706. After reviewing the insurance policy, I find that there is only one reasonable interpretation of the phrase "Creston Court Condominium" and that is that the parties intended to refer to the Association, not Creston Court. Although Creston Court may have managed and controlled the Association prior to the turnover date, Creston Court did so in its capacity as the declarant or developer of the property. The policy as a whole makes clear that the intended insured is a condominium association, not a declarant or a developer. For instance, the title of the policy is, "Condominium Association Insurance Policy." Ex. 1, Heineman Decl., # 18–1, at 1. Further, the policy differentiates between "you," which refers

to the named insured, and "the builder, developer or sponsor" of the property. *Id.* at 15; *see also id.* at 30. With regard to the latter, the policy states: "We reserve our right ... to recover against the builder, developer or sponsor for acts or omissions that the builder, developer or sponsor may be liable for in the capacity as a builder, developer or sponsor." *Id.* at 15; *see also id.* at 30 (noting that the "the insurance afforded with respect to the developer in the developer's capacity as a unit owner does not apply to liability for acts or omissions as a developer"). Thus, viewing the policy as a whole, I find that the only reasonable interpretation of the phrase "Creston Court Condominium" is that it refers to the Association, not Creston Court.

### 2. Unit Owner

Creston Court and the Association alternatively argue that Creston Court qualifies for insured status as a unit owner. Under the policy section titled "WHO IS AN INSURED," subsection five provides:

> Your individual unit owners, but only for liability arising out of the ownership, maintenance or repair of that portion of the premises which is not reserved for that unit owner's exclusive use or occupancy.
>
> However, the insurance afforded with respect to the developer in the developer's capacity as a unit owner does not apply to liability for acts or omissions as a developer.

*Id.* at 30 (emphasis omitted). Creston Court and the Association note that the complaint in the underlying action alleges that Creston Court was the original owner of all of the units and that, although the policy excludes from coverage acts or omissions as a developer, it does provide coverage for a developer in its capacity as unit owner. Plaintiffs respond that the

underlying action "clearly arise[s] out of [Creston Court's] role as the developer/converter of the project, not its role as a unit owner." Plaintiffs' Reply in Support of Motion for Summary Judgment, # 28, at 9.

I agree with plaintiffs. Creston Court and the Association correctly note that the language "the insurance afforded with respect to the developer in the developer's capacity as a unit owner does not apply to liability for acts or omissions as a developer" suggests that the policy may provide coverage to a developer under some circumstances. However, here, the complaint in the underlying action alleges construction defects and misrepresentations in the marketing and sale of the condominium units, which are developer activities. Creston Court and the Association point to no allegations in the underlying complaint that seek to impose liability on Creston Court as a unit owner. For instance, the first claim, alleging negligence, expressly states that it arises out of Creston Court's "development of the Condominium, including planning, design, inspection, repair, renovation and initial sales." Ex. 1, Second Guse Decl., # 40–1, at 12. The second, third, fourth, and fifth claims—alleging, respectively, breach of contract, breach of express warranty, breach of implied warranties, and negligent misrepresentation during the marketing and sale of the units—clearly relate to Creston Court's acts or omissions as a developer. The sixth and seventh claims are based on Oregon law imposing certain duties on developers of condominiums. Finally, the eighth claim alleges breach of fiduciary duty arising out of Creston Court's control of the Association prior to the turnover date—an activity related to its role as the declarant of the Condominium. See Or. Rev.Stat. § 100.200 (stating that a condominium association's bylaws may provide for a period of declarant control). Thus, it

is clear that the claims allege liability arising out of Creston Court's acts or omissions as a developer and, consequently, Creston Court does not qualify for insured status as a unit owner.

### 3. Real–Estate Manager

■ Finally, Creston Court and the Association argue that Creston Court qualifies for insured status because it was a real-estate manager. See Ex. 1, Heineman Decl., # 18–1, at 30 (providing coverage for "[a]ny person, other than your 'employee,' or any organization while acting as your real estate manager" (emphasis omitted)). Creston Court and the Association contend that, because the phrase "real-estate manager" is not defined in the policy, it must be given its ordinary meaning, which is " 'one who conducts, directs or supervise's another's real estate." Association's Response in Opposition, # 21, at 14 (quoting Clarendon Am. Ins. Co., 2013 WL 54032, at *8). Creston Court and the Association note that the underlying complaint specifically alleges that Creston Court acted as a real-estate manager:

> [Creston Court] and/or Reliance controlled, managed, and were responsible for the Association until it was turned over to the Owners. As part of [Creston Court's] and/or Reliance's control and management, [Creston Court] and/or Reliance conducted, directed, and supervised the real property within the Association. Based on these activities, both [Creston Court] and Reliance acted as real estate managers of the Association.

Ex. 1, Second Guse Decl., # 40–1, at 5.

In response, plaintiffs contend that, despite the underlying complaint's allegation that Creston Court acted as a real-estate manager, the factual allegations in the underlying complaint clearly show that the Association seeks to hold Creston Court liable for its acts as developer. Moreover,

plaintiffs contend that, "to the extent [Creston Court] was or is a unit owner, as is alleged in the complaint, it would not be managing the real estate of *another*, as required." Plaintiffs' Reply in Support of Motion for Summary Judgment, # 28, at 13.

If an insurance policy defines a phrase, the court applies that definition. *See Holloway v. Republic Indem. Co. of Am.*, 341 Or. 642, 650, 147 P.3d 329, 333 (Or.2006). If, however, the policy does not define a phrase, the court must first consider whether the phrase has a "plain meaning." *Id.*, 147 P.3d at 333 In this case, both of the parties agree that "real-estate manager," though not defined in the policy, has a plain meaning—that is, one who conducts, directs, or supervises another's real estate. *See Clarendon Am. Ins. Co.*, 2013 WL 54032, at *8. The underlying complaint specifically alleges that Creston Court "conducted, directed, and supervised the real property within the Association." Ex. 1, Second Guse Decl., # 40–1, at 5. In determining whether plaintiffs have a duty to defend, I must accept the allegations in the underlying complaint as true. *See, e.g., Riedel v. First Nat'l Bank of Or.*, 287 Or. 285, 294, 598 P.2d 302, 307 (Or.1979). Thus, I must accept as true that Creston Court conducted, directed, and supervised the real property of the Association and, therefore, that Creston Court was a real-estate manager.

My inquiry does not end there. The insurance policy provides that an organization qualifies as an insured only "while acting as [the named insured's] real estate manager." Ex. 1, Heineman Decl., # 18–1, at 30. Thus, I must consider whether the underlying complaint seeks to impose

liability on Creston Court for its acts or omissions as a real-estate manager. I find that it does. For instance, as Creston Court and the Association noted during oral argument, paragraph 26 of the underlying complaint alleges that Creston Court "was responsible for supervising the architectural design and repair and renovation work," *see* Ex. 1, Second Guse Decl., at 12, and paragraph 30 alleges that Creston Court failed to "repair or renovate the Condominium properly," *id.* at 13. These paragraphs allege conduct falling within the scope of a real-estate manager's duties—that is, supervising the repair and renovation of the Condominium.[5] Moreover, these paragraphs seek to impose liability based on Creston Court's failure to properly perform the repairs and renovation. Although plaintiffs argue that Creston Court undertook to repair and renovate the building in its capacity as a developer, Creston Court and the Association persuasively argue that real-estate manager and developer are not mutually exclusive roles. Plaintiffs were certainly free to draft the policy to exclude developers acting as real-estate managers from insured status, but they did not do so.

Thus, in light of the foregoing, I find that Creston Court, while not the named insured, qualifies for insured status as a real-estate manager and, thus, plaintiffs have a duty to defend Creston Court in the underlying action.

## II. Does an Exclusion Apply?

Plaintiffs alternatively argue that, if Creston Court qualifies for insured status as a unit owner, plaintiffs still have no duty to defend because the owned-property exclusion applies. In light of my find-

---

5. Because I must accept as true the allegations in the underlying complaint, I assume that at least some of these repairs and renovation activities took place after the individual units were sold, such that Creston Court supervised the repair and renovation of the real estate *of another* (the unit owners).

ing above that Creston Court does not qualify for insured status as a unit owner, I find it unnecessary to address plaintiffs' argument.

## CONCLUSION

For the reasons discussed above, plaintiffs' motion for summary judgment (# 16) should be denied and the Association's cross-motion for summary judgment (# 23) and Creston Court's cross-motion for summary judgment (# 26) should be granted.

## SCHEDULING ORDER

The Findings and Recommendation will be referred to a district judge. Objections, if any, are due fourteen (14) days from service of the Findings and Recommendation. If no objections are filed, then the Findings and Recommendation will go under advisement on that date.

If objections are filed, then a response is due fourteen (14) days after being served with a copy of the objections. When the response is due or filed, whichever date is earlier, the Findings and Recommendation will go under advisement.